## BREWER v. DODSON et al.

No. 7559—Opinion Filed June 20, 1916.

Rehearing Denied July 25, 1916.

(159 Pac. 329.)

**1. Guardian and Ward—Approval of Final Report—Direct Attack.**

A petition, in an action by a ward against a former guardian and his surety, charging that an order of the county court approving the final report of such guardian, discharging him, and releasing the surety from further liability, was procured by fraud, is a direct attack upon such order.

**2. Indians—Administration of Ward's Estate—Sale of Property—Effect.**

Where allotted and inherited lands of a minor Creek freedman allottee are sold and converted into money by his guardian, through the medium of the county court. there occurs a mere change in the form of such property, which is still charged with the trust, and remains subject to the jurisdiction of that court during the minority of the ward as defined by congressional enactment and shown by the enrollment records.

**3. Indians—Limitation of Actions—Emancipation of Minor—Effect of Judgment—Period of Limitation—Minority of Party.**

(a) A judgment, conferring rights of majority upon a minor Creek freedman allottee, regardless of fraud in its procurement, is ineffectual and void in so far as it purports to empower him to transact business as an adult with reference to the proceeds of his allotted and inherited lands, or to personally maintain an action for the recovery thereof.

(b) And where more than three years after the rendition of such judgment the allottee, while still a minor as defined by the act of Congress of May 27, 1908 (35 Stat. 312, c. 199), and evidenced by the enrollment records, by next friend, commenced suit against a former guardian and his surety, to recover the proceeds of the sale of his allotted and inherited lands, held, that the statute of limitations had not been set in motion as to the allottee plaintiff in such action, and interposes no bar to the relief sought.

(Syllabus by Bleakmore, C.)

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by Emmett Brewer, by his guardian ad litem, George W. Parker, against J. S. Dodson and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Dan M. Meredith and Geo. W. Parker, for plaintiff in error.

Thomas H. Owen, Joseph C. Stone, Alvin F. Molony, Thea E. Lipscomb, Sumner J. Lipscomb, and L. J. Roach, for defendants in error.

Opinion by BLEAKMORE, C. On August 20, 1914, Emmett Brewer, by Alice Goodman, his next friend, commenced this action against J. S. Dodson and the American Surety Company. The parties occupy the same relative position here, and are referred to, as they appeared in the trial court.

By the petition it is alleged, in substance, that plaintiff is a minor Creek freedman, enrolled as of 4 years of age in September, 1898; that there was allotted to him 160 acres of land, and upon the death of his father and sister he inherited 320 acres of other lands; that on April 25, 1910, the defendant Dodson was appointed guardian of plaintiff's estate, and as such executed two bonds for $1,500 and $5,000, respectively, with the American Surety Company as surety; that on September 2, 1910, by virtue of proper proceedings in the county court of Muskogee county, his guardian sold his allotted lands for the sum of $6,519, and on October 5, 1910, in the same manner, sold his inherited lands for $2,700; that three days thereafter defendant Dodson, together with his stepfather, A. M. Goodman, induced plaintiff, then a minor as shown by the records of the Commission of the Five Civilized Tribes, and in fact 16 years old, to petition the superior court of Muskogee county to confer upon him the rights of majority, and in said petition falsely represent that he had been a resident of Muskogee county for more than one year, and was then 19 years of age; that plaintiff, who had theretofore worn knee pants, was dressed in long trousers on the occasion of his appearance before that court, which, on October 15, 1910, rendered judgment, conferring upon him the rights of majority concerning contracts; that on the same day defendant Dodson filed in the county court of Muskogee county his report as guardian, showing a balance of $8,082.74 due the plaintiff, his ward; that two days later at the instance of Dodson, plaintiff, without receiving any part thereof, signed and delivered a receipt, acknowledging the payment to him of said $8,082.74; that thereafter, on January 23, 1911, the county court of Muskogee county, relying upon the truthfulness of said receipt showing that plaintiff had been paid said amount in full, and upon faith of the judgment of the superior court, regarding the same as valid and binding, made and entered an order approving said report and discharging Dodson as guardian, and releasing the American Surety Company from further liability upon his bond; that thereafter Dodson gave the plaintiff a check for $3,750, which was deposited by his stepfather, Goodman, and Dodson, in a bank to the credit of his mother, who subsequently withdrew and dissipated the same. There was a prayer for cancellation of the receipt,

vacation of the order approving the final report of said guardian, and discharging him and releasing his surety, for judgment against Dodson in the sum of $8,082.74, and against the American Surety Company for $6,500. Defendants demurred to the petition on the grounds: (1) Failure to state a cause of action; (2) that the cause of action alleged was barred by the statute of limitations; and (3) that the district court was without jurisdiction of the subject-matter.

In determining the principal questions presented by the record we may consider: First, the jurisdiction of the trial court, which involves the nature of the attack upon the order of the county court; second, the effect of the judgment of the superior court, conferring the rights of majority upon the plaintiff; and, third, the statute of limitations.

It is urged that the order of the county court, approving the report of the guardian, and discharging him and releasing the surety upon his bond, could only be vacated in a proper proceeding for the purpose in that court, and that the district court is therefore without jurisdiction to grant the relief sought. We are unable to agree with this proposition. In this case fraud is charged on the part of the defendant Dodson. It is alleged, in effect, that, having converted the whole estate of his ward, consisting of 480 acres of allotted and inherited lands, into money, between April 25 and October 5, 1910, in conjunction with plaintiff's stepfather, Dodson knowingly influenced the plaintiff, an ignorant negro boy of 16, in short trousers, to falsely represent his age and residence to a court, in a petition praying the removal of his disabilities as a minor; that he procured for plaintiff his first long trousers, to be worn upon the occasion of the hearing of said petition, ostensibly to deceive the court in regard to his age by his appearance, and on the very day the judgment of emancipation was procured as a result of such falsehood and deception, filed in the county court a report, showing final settlement of his guardianship account and receipt of his ward for more than $8,000, which, in fact, had never been paid to him, and later consummated his scheme to exploit the estate by obtaining from that court the approval of such account, his discharge as guardian, and the release of his surety, by means of such false receipt, and the judgment procured by fraud upon the jurisdiction of another court.

It is clear that the judgment of the superior court, and the order of the county court, based upon falsehood, fraud, and chicanery, induced and participated in by the defendant Dodson, were not procured on behalf of the plaintiff or in his interest, but, on the contrary, were intended to, and will if permitted to stand, denude him of his estate and leave him penniless, the procedure designed by the law for his protection being employed to rob him and profit his guardian. It is in such instances, where intimate trust relations are violated and advantage taken of ignorance, dependence, and helplessness, that speedy equitable remedies are peculiarly appropriate; and where, as a means of accomplishing such unconscionable purpose, fraud is practiced in invoking the jurisdiction of another tribunal, the district court may properly exercise its powers in equity under the Code to relieve against the wrong by setting aside the judgment of such tribunal, which would not have been rendered in the absence of fraud, or may refuse to give effect thereto. In Brown et al. v. Trent et al., 36 Okla. 239, 128 Pac. 895, this court said:

"Fraud vitiates everything founded upon it, and when the fraud is established, no court will give effect to a judgment so procured. In one sense, it is not a judgment at all. Grantham v. Kennedy, 91 N. C. 148. The presumption is that the judgment would not have been rendered if the court rendering it had not been imposed upon, and the presumption applies with equal weight to the judgment of the highest and lowest court."

In Bridges v. Rea et al. (not yet officially reported), 166 Pac. 416, a suit in ejectment and to set aside, for fraud in their procurement, certain proceedings in the county court culminating in the sale of plaintiff's land by her guardian, it was said by Mr. Justice Turner, speaking for the court:

"It will not do to say that this is a collateral attack, and that the proceedings of the county court, which show a sale for cash, cannot be impeached by evidence aliunde, as we held in Hathaway v. Hoffman [reported in 53 Okla., at page 72, 153 Pac. 184]. This for the reason that this is not a collateral attack, but a direct attack, alleging fraud in the procurement of the proceedings. As to whether this is a direct or collateral attack was correctly decided and put at rest in Brown et al. v. Trent et al., 36 Okla. 239 [128 Pac. 895], which was a suit in the district court to quiet title to certain lands, and there, as here, the charge was that the order of court directing the guardian to sell the land was procured by fraud. It was there held that the attack was a direct and not a collateral attack. This court said: 'This proceeding is a direct attack upon that judgment. It is a suit, one of the ultimate purposes of which is to set aside the order of sale and the order confirming the sale. Bergin v. Haight, 99 Cal. 52, 33 Pac. 760; Campbell-Kawannanakoa v. Campbell, 152 Cal. 201, 92 Pac. 184. It is alleged that the orders were procured by fraud, and a portion of the prayer is that they be canceled and set aside.' "

And further on in the opinion:

" 'But an attack upon a judgment for fraud in its procurement is a direct attack over which courts of equity take jurisdiction, and no well-considered case can be found in which such jurisdiction is denied. See Sharp v. Danville, etc., R. Co., 106 N. C. 308, 11 S. E. 530, 19 Am. St. Rep. 533; Uzzle v. Vinson, 111 N. C. 138, 16 S. E. 6. The case of Bergin v. Haight, 99 Cal. 52, 33 Pac. 760, was a suit brought to quiet title, in which it was attempted to cancel a probate sale upon the ground of fraud. The court took jurisdiction and canceled the sale upon that ground. See, also, Coffey v. Greenfield, 62 Cal. 602; Reed v. Bank of Ukiah, 148 Cal. 96, 82 Pac. 845; Lataillade v. Orena, 91 Cal. 565, 27 Pac. 924, 25 Am. St. Rep. 219; Fincke v. Bundrick, 72 Kan. 182, 83 Pac. 403, 4 L. R. A. (N. S.) 820. The cases are very rare, and the circumstances very unusual, when the jurisdiction of a court of equity to cancel any sort of contract or judgment procured by fraud cannot be invoked. 1 Story Eq. (15th Ed. 194). See also, Elrod v. Adair, 54 Okla. 207, 153 Pac. 660; Griffith v. Godey, 113 U. S. 89 [5 Sup. Ct. 383], 28 L. Ed. 936."

Under the circumstances of this case, even if it could be conceded that the recitals in the judgment of the superior court are conclusive, and that such judgment operated generally to confer the rights of majority upon the plaintiff, was it effective to qualify him personally to control and contract with reference to the proceeds of the sale of his allotted lands, which were and could only have been sold through the medium of the county court? We are of opinion that his emancipation, by virtue of said judgment, was limited to transactions exclusive of personal control and disposition of his allotment and inherited lands or the proceeds derived from the sale thereof. Section 1 of the Enabling Act (section 413, Williams' Constitution of Oklahoma) provides:

"That nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed."

By section 2 of an act of Congress of May 27, 1908 (35 Stat. at Large, 312), it is provided:

"That the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions; and the term minor or minors, as used in this act, shall include all males under the age of 21 years and all females under the age of 18 years."

And by section 6 of said act it is further provided.

" * * * That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specified by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

Considering sections 4955a, 4956, 4957, 4959, Comp. Laws 1910, and sections 4427-4430, Rev. Laws 1910, authorizing the proceedings of the character had in the superior court of Muskogee county, this court, in B. F. Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846, said:

"The statutes above referred to need no analysis, or even a construction here, for the reason that when the question of the removal of restrictions from allotted lands, or the right of alienation of such lands, or the power of alienation is involved, we must look to the acts of Congress and to those acts and laws alone. In other words, if a state law, by its language or through its proper construction or its operation, would permit the alienation of a restricted Indian allotment, or render a deed thereto effective, where the land would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state laws fail; and this, because the federal government retained jurisdiction in these Indian matters to the extent stated in the Enabling Act, under the terms of which Oklahoma became a state; and this reservation of jurisdiction was assented to in the Constitution which the people adopted. To give the desired construction to either of the statutes under consideration would be, in effect, to accomplish the removal of the federal restrictions on the sale of allotted lands, by means of state legislation. Once conceding this principle, it is easily seen that the federal control would be interfered with, and might ultimately be entirely suspended. No such construction is possible. Chapman v. Siler, 30 Okla. 714, 120 Pac. 608; Walker v. Brown, 43 Okla. 144, 141 Pac. 681; In re Probate of Will of Emerson Allen, 44 Okla. 392, 144 Pac. 1055; section 1, Enabling Act (running section 413, Williams' Ann. Const.; section 43, art. 24, Constitution); Truskett v. Closser, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549."

It has been repeatedly held by this court that the deed of a minor allottee, attempting to convey his allotted land, is void, and that such sale can only be made by guardian in the proper proceedings in the county court. Tirey v. Darneal, 37 Okla. 606, 133 Pac. 614; Reid v. Taylor, 43 Okla. 816, 144 Pac. 589. In Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334, it is held:

"A decree of a district court of this state, purporting to confer upon an Indian minor allottee of tribal lands majority rights, including authority to execute a conveyance of her allotment, is ineffectual and void, in so far as it undertakes to authorize a con-

veyance of said lands in violation of the congressional restrictions thereon."

In Truskett v. Closser, 236 U. S. 223, 35 Sup. Ct. 386, 59 L. Ed. 549, it was held by the Federal Supreme Court:

" 'Section 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. * * * ,

"Section 2 defines minors, male and female, and provides for the disposition of their property under, as stated, rules and regulations provided by the Secretary of the Interior, and declares that the jurisdiction of the probate courts of the state shall be subject to its provisions. And 6 declared to what courts the property of minors so defined shall be subject. Explicitly such property is made 'subject to the jurisdiction of the probate courts of the state of Oklahoma.' The qualification 'except as otherwise specifically provided by law' means, as said by the Circuit Court of Appeals, 'federal law, not state law.' * * * The conferring of the rights of majority, conformably to a state statute, upon a minor Indian allottee so as to qualify him to make a lease, must be deemed to be beyond the power of an Oklahoma district court; notwithstanding the removal of restrictions on alienation by Indian allottees made by the act of May 27, 1908. * * * "

See, also, Barbre v. Hood (D. C.) 214 Fed. 473.

In Cochran v. Teehee, 40 Okla. 388, 138 Pac. 563, a case in which a female Cherokee allottee, under guardianship, actually over the age of 18 years, but shown by the enrollment records to be a minor, sought to recover certain royalties and proceeds derived from her allotted lands held by her guardian, this court held such royalties and proceeds subject to the control of the county court in the exercise of its probate jurisdiction, and, in considering the provisions of the act of May 27, 1908, supra, said:

"That the statute in question placed the lands of these allottees who were minors under the jurisdiction of the probate courts of Oklahoma, and that such jurisdiction extended to a full superintending control over the lands and to the time when the said minors, as provided by the said act, attained their majority, presents a common highway which both parties to this action travel together; the divergence occurs on the rule obtaining where the proceeds of the allotments are involved and the actual age differs from that shown by the roll. Does this statute then apply? * + * Congress retained all of its power and authority, notwithstanding statehood, and its right therein was yielded by the state on its organization. Section 1, Enabling Act (section 413, Williams' Ann. Const. Okla.). The contention of counsel for plaintiff is that the act should be so construed that, while the member was conceded to be incompetent to deal with his land, sell it, lease it, or otherwise dispose of it himself, yet, after this has been done and the proceeds of its sale, mortgage, or leasing were paid, that he, should he be shown, otherwise than by the rolls, to have attained his majority, should be held to be legally competent and qualified to receive them free from all supervision; that, while it must be conclusively held that he was too weak and incompetent to protect himself while his property was invested in his land, yet that, as soon as it was in money, he would be astute and wise enough to protect himself and properly conserve it; that the lands themselves and their leasing or disposition presented the only question arising under this act; and that the proceeds themselves were beyond purview. We are unable to concur in this contention. To so hold would be to give full force, faith, and credit to the act during all of the time while the property was in a condition that it could not escape, be destroyed nor stolen, and eliminate all protection from these incompetent people when it would palpably be needed most. That it is not susceptible of the construction contended for is, to our minds, clear, not only from the specific terms of the act itself, but from the entire trend of congressional legislation and judicial constructions relating to these people. The act itself, in section 1, provides, in reference to certain full and mixed blood Indian lands, that the Secretary of the Interior may remove the restrictions under rules and regulations concerning the terms of the sale, and also provides for the disposal of the proceeds for the benefit of the respective Indians. Herein is recognized that it is the intention of the lawmakers not to withdraw the protection of the department from such allottees so far as the proceeds arising from the sale of their lands were concerned. Section 6, as noted above, provides that the minor allottees, as well as their property, except as otherwise specifically provided by law, shall be subject to the jurisdiction of the probate courts. The lands of these allottees, as conceded, are subject to such jurisdiction, and we can see no reason for holding that, where the lands are exchanged for money, then the protection is removed. In the absence of any specific congressional provision for the management and control of the proceeds derived from these lands, we presume that Congress intended that they should be managed in accordance with the statutes of the state of Oklahoma relating to such subjects. Section 5491, Comp. Laws 1909, provides as follows: 'Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefor, as provided, and must apply

the proceeds )f such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any.' The act provided for the retention by the probate court of jurisdiction over the lands of these allottees until they became of age as shown by the rolls, and we believe that a reasonable construction is that, until such allottee becomes of age as shown by the rolls, the disposition of his allotted lands and the proceeds thereof are subject to the jurisdiction of the probate court without reference to what extraneous proof may show with reference to his actual age, and that it was the intention of Congress that this should be so."

The exclusive plenary power of Congress to legislate with respect to inherited as well as allotted lands of members and freedmen of the Five Civilized Tribes was not impaired by the advent of statehood. Section 1, Enabling Act, supra. And to our minds the language used in the act of May 27, 1908, viz., "that the person and property of all minor allottees of the Five Civilized Tribes shall, except as otherwise specified by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma." is sufficiently comprehensive to embrace all property of such minors. including inherited lands, relative to which the federal government had authority to make any law or regulation, and plainly indicates the intention of Congress to exercise its superintending control over such property during the period of minority fixed by that act. by employing the probate courts of the state as federal agencies for that purpose. Clearly it was contemplated that the property of plaintiff, consisting of his allotted and inherited lands, during the period of his minority as fixed by congressional enactment, should be held in trust by guardian subject to the jurisdiction of the county court; and, when said lands were sold and converted into money under the order of that court, there occurred merely a change in the form of such property. which was still charged with the trust, and remained subject to the jurisdiction of the court until plaintiff reached his majority under the federal act. In United States v. Thurston County, 143 Fed. 287, 74 C. C. A. 425, it is said:

"No change of form of trust property can divest it of a trust. The substitution of one kind of property for another, of goods for promissory notes, of lands for bonds, or of money for lands. does not destroy it. The substitute takes the nature of the original, and stands charged with the same trust. Taylor v. Plummer. 3 Maule & Sel. 562. 574; In re Hallet's Estate. Knatchbull v. Hallett. 13 Chan. Div. 696. 717, 719. 733: Cook v. Tullis. 18 Wall. (85 U. S.) 332, 341, 21 L. Ed. 933: McLaughlin v. Fulton. 104 Pa. 161. 171; Third National Bank v. Stillwater Gas Co., 36 Minn. 75. 78, 30 N. W. 440: 2 Perry

on Trusts, secs. 835, 837; National Bank of Commerce v. Anderson, 147 Fed. 90, 77 C. C. A. 259. Intervening rights of innocent third parties are in no way involved in this case.'"

Upon the authority of the foregoing decisions it must be held, regardless of the fraud in its procurement, that the judgment of the superior court of Muskogee county,. conferring majority rights upon plaintiff concerning contracts, was ineffectual and void in so far as it purported to empower him to transact business as an adult with reference to the proceeds of the sale of his allotted. lands, or to personally maintain an action for the recovery thereof. He was at all times under 21 years of age, in fact and as shown by the enrollment records of the Commission to the Five Civilized Tribes; and, with regard to such property, under the provisions of the federal statutes (which supplant the state law wherever Congress has seen proper to legislate in the interest of allottees of the Five Civilized Tribes, or concerning their property rights), he had not reached his. majority.

It is here contended, and the trial court so held. that plaintiff's cause of action was barred by the statute of limitations. The provision of the statute relied upon by the defendant Dodson is as follows:

"Section 4657, Rev. Laws 1910. Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards. * * *

"Second. Within three years. An action upon a contract, express or implied, not in writing; an action upon a liability created by statute, other than a forfeiture or penalty. * * * *".

The statute relied upon by the surety company provides:

"Section 6582, Rev. Laws 1910. Action on bond. No action can be maintained against the sureties on any bond given by a guardian, unless it be commenced within three years from the discharge or removal of the guardian; but if at the time of such discharge the person entitled to bring such action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed."

In Bell v. Fitzpatrick, supra, it was held:

"The statute of limitations does not begin to run against an action to set aside a void conveyance of an Indian minor allottee to his or her allotted lands. executed after the passage and approval of Act Cong. May 27, 1908, c. 199, 35 Stat. 312, until such minor has attained his or her majority, as shown by the enrollment records of the commissioner to the Five Civilized Tribes."

It follows from what we have heretofore said that at all times before and when this

suit was commenced plaintiff was under the legal disability of minority, and not entitled to sue to recover the proceeds of his allotted and inherited lands; and therefore the statute of limitations was never set in motion as to him in that regard, and interposes no bar to the maintenance of this action therefor.

The trial court erred in sustaining the demurrers to the petition; and its judgment should be reversed, and the cause remanded.

By the Court: It is so ordered.