## BREWER v. PERRYMAN et al.

No. 7558—Opinion Filed Jan. 9, 1917.

(162 Pac. 791.)

**1. Guardian and Ward—Bond—Sureties—Accrual of Cause of Action.**

A cause of action against the sureties on a guardian's bond accrues when the guardian is relieved of office by order of the county court, and his account, showing an indebtedness to his ward, is finally settled by judgment of that court; whereupon the statute of limitations immediately begins to run as to such cause of action, if the person then entitled to bring action is under no legal disability to sue.

**2. Same—Limitation of Actions.**

Where a guardian, removed from office, fails to pay to his successor an amount shown to be due by him by formal order of the county court settling his guardianship accounts, and a succeeding guardian neglects while in office to bring suit therefore, the ward during infancy may, by next friend, maintain an action against the first guardian and his surety for recovery of the sum due him, although more than three years have elapsed from the removal of the first guardian before the commencement of such action.

**3. Guardian and Ward—Duties of Guardian.**

Where a general guardian has been appointed and qualified, it is his duty to sue for and receive all debts due to his ward and to appear for and represent him in all legal proceedings, unless another person is appointed for that purpose as guardian ad litem or next friend.

**4. Same—Collection of Ward's Estate.**

A guardian is liable, not only for the portion of his ward's estate actually coming into his hands, but also for such part thereof as he might have recovered by the exercise of ordinary diligence.

**5. Indians—Limitation of Actions—Indian Lands—Rights of Allottees.**

A judgment conferring rights of majority upon a minor Creek freeman allottee, re-

gardless of fraud in its procurement, is ineffectual and void in so far as it purports to empower him to transact business as an adult, with reference to the proceeds of his allotted and inherited lands, or to personally maintain an action for the recovery thereof. And where more than three years after the rendition of the judgment the allottee, while still a minor as defined by Act Cong. May 27, 1908 (ch. 199, 35 Stat. 312), and evidenced by the enrollment records, by next friend, commenced suit against a former guardian and his surety to recover the proceeds of his allotted and inherited lands, held, that the statute of limitations had not been set in motion as to the allottee plaintiff in such action, and interposes no bar to the relief sought.

(Syllabus by Bleakmore, C.)

Error from District Court, Muskogee County; R. P. de Graffenreid, Judge.

Action by Emmett Brewer, by his next friend, Alice Goodman, against Jackson Perryman and others. From a judgment for defendants, plaintiff appeals. Reversed in part and remanded.

Dan M. Meredith and George W. Parker, for plaintiff in error.

William T. Hutchings, for defendant in error Southern Surety Co.

Thomas H. Owen, Joseph C. Stone, Alvin F. Molony, Thea. E. Lipscomb, Sumner J. Lipscomb, and L. J. Roach, for other defendants in error.

Opinion by BLEAKMORE, C. On September 26, 1914, Emmett Brewer, by next friend, Alice Goodman, commenced this action against his former guardian, Jackson Perryman, and the surety on his bond as guardian, the Southern Surety Company, to recover $545.25, the amount adjudged to be due from such guardian to his ward, the plaintiff, by the county court of Muskogee county, upon his removal as guardian and final settlement of his account on July 14, 1910. These defendants answered, alleging payment of such amount to J. S. Dodson, who on April 25, 1910, succeeded Perryman as guardian of plaintiff and was ordered discharged as such on January 23, 1911. Thereafter Dodson and the surety on his bond as guardian, the American Surety Company, were made parties defendant, and answered denying such payment. Subsequently all defendants filed separate amended answers, pleading the statute of limitations as a bar to the recovery sought. Thereupon plaintiff was permitted to amend his petition against all of the defendants, wherein he alleged, among other things: "That all money sued for in this cause came into the hands of the plaintiff's guardian by reason of rents, royalties, and profits from restricted lands. * * * That the money sued for herein came to this plaintiff by reason of rents, royalties, and profits arising from restricted lands coming to him by reason of his citizenship in the Muskogee Creek Nation and by reason of the land allotted to him by the said Muskogee Creek Nation." That the defense of the statute of limitation set forth in the amended answers is based upon a judgment of the superior court of Muskogee county rendered October 15, 1910 (a copy of which is attached as an exhibit) conferring the rights of majority upon plaintiff. That plaintiff is and was at all times prior to the bringing of this action a minor Creek freedman allottee, duly enrolled as of four years of age in September, 1898. That such judgment is void and ineffective in its operation in so far as it purports to confer upon plaintiff the rights of majority relative to the subject-matter of this action. That said court was without jurisdiction to render such judgment, for the reason that plaintiff had not been a bona fide resident of Muskogee county for one year next preceding the filing of the petition herein. That, although it was set forth in said petition that plaintiff was 19 years of age, he was in fact as shown by enrollment records of the Commissioner of the Five Civilized Tribes but 18 years of age at the time, and incapable of managing his property or business. That these and other false allegations in such petition were made for the fraudulent purpose of deceiving the court, and that his then guardian participated in such fraud and deception, etc.

To the amended petition, defendants Southern Surety Company, American Surety Company, and J. S. Dodson, separately demurred, generally, and for the reason that this action was not begun within three years from the discharge of the guardians. The demurrers were sustained, and plaintiff has appealed.

In determining questions involved it is well to consider certain provisions of Rev. Laws 1910, to wit:

"Sec. 3339. The power of a guardian appointed by court is suspended only: First. By order of the court. Second. If the appointment was made solely because of the ward's minority, by his obtaining majority. Third. The guardianship over the person only of the ward, by the marriage of the ward.

"Sec. 3340. After a ward has come to his majority he may settle accounts with his guardian and give him a release, which is valid if obtained fairly and without undue influence.

"Sec. 3341. A guardian appointed by a court is not entitled to his discharge until one year after his ward's majority."

"Sec. 6578. When a guardian appointed either by the testator or the county court or judge, becomes insane or otherwise incapable of discharging his trust, or unsuitable therefor, or has wasted or mismanaged the estate, or failed for thirty days to render an account or make a return, the county court may, upon such notice to the guardian as the court may require, remove him and compel him to surrender the estate of the ward to the person found to be lawfully entitled thereto. Every guardian may resign when it appears proper to allow the same; and upon the resignation or removal of a guardian, as herein provided, the county court may appoint another in the place of the guardian who has resigned or has been removed.

"Sec. 6579. The guardian of an insane or other person may be discharged by the judge of the county court when it appears to him, on the application of the ward or otherwise, that the guardianship is no longer necessary."

"Sec. 6581. Every bond given by a guardian must be filed and preserved in the office of the county judge of the county; and in case of a breach of a condition thereof, may be prosecuted for the use and benefit of the ward or of any person interested in the estate.

"Sec. 6582. No action can be maintained against the sureties on any bond given by a guardian, unless it be commenced within three years from the discharge or removal of the guardian; but if at the time of such discharge the person entitled to bring such action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed."

It is contended by the Southern Surety Company that sec. 6582, supra, is a special enactment in the interest and for the protection of such sureties; that, at the time of the removal of Perryman and the final settlement of his accounts as guardian, this cause of action accrued, and the statute of limitations was set in motion as to his successor in office, "the person entitled to sue," who was not under any legal disability, and, having begun to run, was not tolled by the discharge of such successor, some months thereafter, although the ward was then and thereafter under the disability of minority.

The defendant guardians were successively appointed, on account of the minority of the plaintiff; Perryman was removed under authority of sec. 6578, supra, for cause specified therein, and Dodson procured an order purporting to discharge him by virtue of secs. 3340 and 3341, on the theory that he had settled with his ward, who was rendered competent to make such settlement by reason of the judgment of the superior court conferring rights of majority on him.

The statutes of California contain provisions in language identical with that employed in the sections above quoted; and, construing the same, the Supreme Court of that state, in Cook v. Ceas, 143 Cal. 227, 77 Pac. 65, said:

"For the purpose of determining this question, we have only to ascertain the meaning of the expression 'discharge or removal of any guardian,' as employed in section 1805 of the Code of Civil Procedure. The provisions of that section, especially enacted for the protection of sureties on bonds of guardians, are prohibitory and peremptory in terms and effect. No action against them can be maintained unless it be commenced within three years from the 'discharge or removal' of the guardian. The meaning of these words, as used in this connection, is determined by the sense in which they are employed in other sections of the same statute, including the provisions regulating the practice in probate cases, which are made applicable in guardianship proceedings. Code Civ. Proc. sec. 1808. It will be found that the word 'discharge' is used sometimes in a sense peculiar to itself, and sometimes in a sense exactly equivalent to that of the word 'removal.' An executor or administrator may obtain an order or decree that he has fully accounted and paid over to the proper parties the entire residue of the estate after payment of debts and expenses. Such a decree is called a discharge (Id. sec. 1697), and its effect is to exonerate him and the sureties on his bond. This provision of the probate act being applicable to proceedings in guardianship, it follows that a guardian may obtain a similar decree of discharge exonerating him and his sureties; and this evidently is the discharge which the court is prohibited from granting until one year after the ward's majority. Civ. Code, sec. 257. A guardian may settle with his ward the day after he comes of age, and obtain his release; but he cannot have a decree of court confirming the settlement and release until the ward has had a year to consider whether he will affirm or repudiate it. Id. sec. 256. It seems very clear that the discharge contemplated by these provisions of the Codes is not the discharge referred to in sec. 1805 of the Code of Civil Procedure, for it would be absurd to limit the time for bringing an action upon an order which determines that there is no liability—an order which renders it impossible to maintain an action. But there is an other kind of discharge to which that section may be held to refer without imputing folly to the Legislature. It is assumed in sec. 1753 of the Code of Civil Procedure that the guardian of a minor may be discharged of his office by order of court before the ward arrives at the age of majority or marries. The guardian of an insane person may be 'discharged' by order of court when it appears that the guardianship is no longer necessary. Code Civ. Proc. sec. 1802. Guardians of

either sort may be 'removed.' * * * It will thus be seen that the words 'remove' and 'discharge' are used indiscriminately in the statute to designate orders of court which have the effect of simply removing guardians, executors, etc., from office without exonerating them from liability to account. To such orders sec. 1805 has a just and reasonable relation, and no doubt it is to them that it refers. As to the word 'removal,' there can be no doubt that the reference is to an order removing the guardian from office, and, as 'discharge' is sometimes used in the statute in the sense of 'removal,' it is here to be construed in that sense on the principle of noscitur a sociis. There is still another view in which this construction appears most reasonable. There are guardians of minors and guardians of insane. The former are deprived of office by 'removal,' the latter by 'discharge.'"

Section 6582, supra, is a special statute of limitations, applicable to a certain class of sureties, and it would seem that the words "discharge" and "removal" are used therein with reference to those instances in which guardians are deprived or relieved of office by order of court, without exoneration from liability to further account, and are not intended to comprehend the "discharge" contemplated by sec. 3341, regularly obtainable only upon full and fair settlement of the guardianship accounts with, and release by, the ward, and unauthorized until one year after the ward's majority, and which, in the absence of fraud, is conclusive of all matters properly adjudicated by the order granting same.

A cause of action accrues against the sureties on a guardian's bond when the guardian is relieved of office, and his guardianship accounts, showing an indebtedness to his ward, are settled by formal order or judgment of the county court (Anderson, Gdn., v. Anderson, 67 Oklahoma, 165 Pac. 145; Cook v. Ceas, supra), and the statute of limitations immediately begins to run thereon in their favor, if the person then entitled to bring action is under no legal disability to sue.

By Rev. Laws 1910, it is provided:

"Sec. 4683. An executor, administrator, guardian, trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted. Officers may sue and be sued in such name as is authorized by law, and official bonds may be sued upon in the same way."

"Sec. 4686. The action of an infant must be brought by his guardian or next friend. When the action is brought by his next friend, the court has power to dismiss it, if it is not for the benefit of the infant, or substitute the guardian of the infant, or any person as the next friend."

"Sec. 6543. Every guardian must settle all accounts of the ward, and demand, sue for, and receive all debts due to him, or may, with the approbation of the county judge, compound for the same and give discharges to the debtors on receiving a fair and just dividend of his estate and effects; and he must appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose as guardian or next friend."

In no event can an infant regularly maintain an action independently of his guardian or next friend. Hill v. Reed, 23 Okla. 616, 103 Pac. 855; Sutton v. Nichols, 20 Kan. 43. And where a general guardian has been appointed and qualified, he must sue for and receive all debts due to his ward, and appear for and represent him in all legal proceedings, unless another person is appointed for that purpose, as guardian ad litem or next friend.

In the instant case, when, on July 14, 1910, the county court, upon settlement of his account, adjudged that Perryman was indebted to his ward in the sum sued for, Dodson, who was under no disability to sue, had been appointed and qualified as his successor in office, and upon him the duty devolved to bring action against Perryman and his surety therefor. This he neglected to do.

Relative to the contention of the Southern Surety Company, it may be said that while by virtue of the statutory provisions, supra, it was the duty of Dodson to have commenced action in due time against his predecessor in office, Perryman, to recover the amount due his ward, and recovery may be had against him and his surety for any loss occasioned by his negligence in this regard, yet his failure so to do would not, by reason of sec. 4683, Rev. Laws 1910, preclude his ward, while an infant, by subsequent guardian or next friend, or, personally within the statutory period after the disability of minority had been removed, from maintaining an action to recover the sum due him by Perryman. The ward, in contemplation of said section, is "the person entitled to bring such action" in every instance, for in him the right of action is inherent, although while the disability of infancy continues the law wisely provides that his action must be brought by guardian or next friend, as his

representative. In Wood on Limitations (4th Ed.) sec. 238, the general doctrine is announced that:

"Persons who have not attained the age of majority are infants, and in those states where infancy is within the saving clause of the statute, the statute does not run against him or her even though he or she has a guardian who might sue the clause in question."

In Stewart v. Sims, 112 Tenn. 296, 79 S. W. 385, it is stated:

"But we have a case where the guardian has been removed from office, and who had thereafter no right to retain the custody of the ward's estate; his duty being, as he was directed by the court, to pay over the estate in his hands to his successor in office. From the very moment that he was thus denuded of his office, the right accrued to his successor to hold him and his sureties liable for his default. The failure, however, of this successor to institute an action to recover from this defaulting guardian the property which he had in his hands belonging to his former ward could not preclude the minor from instituting an action through a still succeeding guardian, or, in the absence of one such, through his next friend, to obtain a decree for the property so withheld from his estate.

"Upon the filing of the present bill, the complainant, Broyles, became the ward of the chancery court, and it was the duty of that court to see that his interests were protected, and that such decrees were passed as would save his estate from waste and destruction. There can be no doubt if, after the default of Sims, no successor had been appointed by the county court of White county, the minor, through a next friend, might have filed a bill such as is the present, for the purpose of holding his former guardian and the sureties upon his bond liable for this default; and we cannot see that his right in this respect had been altered by the fact that there was a successor who held his office for a number of years, and yet failed to put in operation the machinery of the law to redress the wrongs of his ward. And we think that this minor is not restricted of his rights by reason of the fact that he has now a third guardian, but that under the protection of his guardian as next friend he can come into a court of equity, and do for himself, through that court, that which his second guardian should have done for him years before."

See, also, Fassitt v. Seip, 249 Pa. 576, 95 Atl. 273; 25 Cyc. 1260, 1261.

A guardian is liable, not only for that portion of his ward's estate actually coming into his hands, but also for such part thereof as he might have recovered by the exercise of ordinary diligence; and, if moneys due the estate of his ward are lost on account of his failure to use reasonable care to collect the same, recovery may be had against him therefor. Dunleavy v. Mayfield, 56 Okla. 470, 155 Pac. 1145; Anderson, Gdn., v. Anderson, supra.

With regard to Dodson, and the surety on his bond, the petition, seeking to surcharge his account with the amount lost to the estate of plaintiff by reason of his failure to use ordinary diligence to collect the same, states facts sufficient to constitute a cause of action. The judgment of the superior court conferring the rights of majority upon his ward was obtained by fraud, and within four months thereafter, by virtue of such judgment and a fraudulent showing that he had fairly settled with and been released by the ward, he procured the order of the county court discharging him as guardian. Regardless of all other circumstances, such order was made at a time unauthorized by the statute and was therefore inoperative to effect his discharge.

The other questions presented for review in this proceeding in error have been considered and determined in the case of Emmett Brewer, by his Guardian ad Litem, Geo. W. Parker, v. J. S. Dodson and the American Surety Company of New York, 60 Okla. 81, 159 Pac. 329, wherein it is held:

"A judgment conferring rights of majority upon a minor Creek freedman allottee, regardless of fraud in its procurement, is ineffectual and void in so far as it purports to empower him to transact business as an adult with reference to the proceeds of his allotted and inherited lands, or to personally maintain an action for the recovery thereof. And where, more than three years after the rendition of such judgment, the allottee, while still a minor as defined by the Act of Congress of May 27, 1908, and evidenced by the enrollment records, by next friend, commenced suit against a former guardian and his surety to recover the proceeds of the sale of his allotted and inherited lands, held, that the statute of limitations had not been set in motion as to the allottee plaintiff in such action, and interposes no bar to the relief sought."

The statute of limitations had not begun to run as to the cause of action against Dodson, and the trial court also erred in sustaining his demurrer, and that of the American Surety Company.

The judgment should therefore be reversed, and the cause remanded.

By the Court: It is so ordered.