### SOUTHWESTERN SURETY INS. CO. et al. v. FARRISS et al.

No. 13749—Opinion Filed Feb. 2, 1926.

Rehearing Denied June 22, 1926.

**1. Judgment — Subrogation by—Essentials of Right—Equitable Principles.**

A judgment whereby subrogation is awarded to sureties on a guardian's bond in one action, to be enforced against a subsequent anticipated recovery in another action, must, when the subsequent recovery is had, be shown to be then supported by equitable principles, and where it is clearly shown that the parties against whom the right of subrogation is sought to be enforced have equities equal to or superior to the equities of the subrogees, as well as legal rights which would be invaded by the enforcement of subrogation against them. equity will refuse relief against the legal right so strengthened by equal or superior equities.

**2. Indians—Minors—Federal Law—Alienation or Incumbrance of Land.**

By Act of Congress of May 27, 1908 (35 Stat. at Large, 213), Indian minors are protected against the voluntary or involuntary alienation or incumbrance of their lands, both allotted and inherited, unless the same be effected in the course of probate proceedings, and any other "instrument" or "method" of alienation or incumbrance is "absolutely null and void."

**3. Same—Courts — Stipulated Judgment—Void in Part—Cannot be Validated.**

In an action by a second guardian upon the bonds of a prior absconding guardian, the court has indubitable jurisdiction to determine and fix liability of sureties, but where the court attempts in the same judgment to fix a lien by way of subrogation against the lands of such minor wards and in favor of such sureties, such purported lien being decreed pursuant to written stipulation between the attorneys for the parties. the stipulation so entered into is an "instrument" and its incorporation in the judgment is a "method" of incumbering the lands of said minors which is expressly prohibited by section 5 of the Act of Congress. supra. and is void because so expressly declared by said section.

**4. Same.**

Being void, such judgment cannot thereafter be validated by an order of the same court denying a motion or petition to vacate same, and neither the void judgment nor the order denying the petition to vacate can operate as an estoppel under a plea of res adjudicata in a subsequent action between the same parties. The lack of judicial power to decree the lien inheres in every subsequent proceeding by which color of authority is sought to be imparted to the void portion of said judgment.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court. Garvin County; W. L. Eagleton, Judge.

Action by Southwestern Surety Insurance Company and Southern Surety Company against Thomas L. Farriss et al. Judgment for defendants, and plaintiffs bring error. Affirmed.

The transactions and litigation giving rise to the instant action may be briefly summarized as follows: A. P. Cash. a white man. was the husband of Alice Cash, a Chickasaw Indian of three-fourths blood. Of this marriage five children were born, viz.: Patterson Shi, Tyree. Alpha, Minnie Ruth and Irene Cash. The wife and each of the five children received allotments of land by virtue of their tribal enrollments. Alice Cash died in 1906 or 1907, leaving all of the above named children and her husband surviving. Thereafter A. P. Cash was appointed guardian of the children, and made bond and entered upon the discharge of his duties as such guardian. On July 15, 1909, the guardian appears to have executed a new guardian's bond with the Southern Surety Company as surety thereon. Thereafter proceedings were had in the county court of Garvin county for the sale of the individual allotments of the five minors, together with their undivided interests in the allotment of their deceased mother, and on March 26. 1910, an additional sales bond was executed by the guardian with the Southwestern Surety Insurance Company as surety thereon. Pursuant to said sale proceedings the guardian executed his deed September 30, 1910, conveying all of said lands to A. L. McDonald for a stated consideration of $24,514. A. L. McDonald sold the land to Jennie C. Estes, and she placed four mortgages upon it as follows: To the Prudential Insurance Company for $15,000; to the Deming Investment Company for $1,500; to T. H. Vaughn for $3,834, and to A. L. McDonald for $1,666. Soon after this sale was made and during the year 1910, the guardian, A. P. Cash, absconded to Canada, and Alvin F. Pyeatt. was appointed guardian. The county court of Garvin coun-

ty had a hearing and stated the account of the former guardian. A. P. Cash, determining the amount of his indebtedness to his wards as $25,460.52. Pyeatt, as guardian, commenced an action in the district court of Garvin county to cancel and set aside the guardian's deed made pursuant to the sale proceedings above mentioned upon the ground of fraud. This case was No. 826 in the district court. Thereafter he instituted a second action against the sureties on the guardian's bond of A. P. Cash, and against the surety on the additional sales bond, to recover the amounts found to be due by the county court. This case was No. 1532 on the district court docket. Before this second case came to trial certain errors and discrepancies were discovered in the statement of the account made by the county court, and the order and judgment of the county court were reformed so as to fix the shortage of A. P. Cash, guardian, at approximately $13,000. In case No. 1532 in the district court judgment was rendered upon stipulation of the parties. By the stipulation it was recited that the total net liability of the guardian, A. P. Cash, by reason of the sale of said lands and his failure to account, was the sum of $9,318, and it was further agreed and stipulated that "Southwestern Surety Insurance Company and the Southern Surety Company be subrogated to the extent of any payments made to plaintiff or plaintiffs in this cause on account of the judgment herein rendered in favor of said plaintiffs and against said surety companies to any recovery that may be had in case No. 826 in the district court of Garvin county." This stipulation of the parties was entered as the decree of the court in cause No. 1532. In case No. 326 the guardian, Pyeatt, was defeated in the district court and proceedings in error were prosecuted to and conducted in this court by the surety companies, and resulted in a reversal of the judgment of the trial court, with directions to that court to enter its decree canceling each and all of the conveyances affecting the title to the lands involved and revesting title in the minors upon condition that the guardian pay to the court clerk the sum of $15,000 for the use and benefit of the Prudential Insurance Company of America, the holder of the first mortgage. (Pyeatt et al. v. Estes et al., 72 Okla. 160, 179 Pac. 42.) Thereafter this instant action was commenced by the Southwestern Surety Insurance Company and the Southern Surety Company to enforce their liens by subrogation under the decree of the district court in cause No. 1532. Patterson Shi Cash and Alpha Cash became of age, re-

spectively, in 1919 and 1920, and thereupon sold and conveyed their individual allotments and their undivided interests in their mother's allotment to T. L. Farriss and A. H. Shi. After the institution of this instant action in the district court, Alpha Cash, Patterson Shi Cash, Thomas L. Farriss, and A. H. Shi filed their petition in cause No. 1532 to vacate the judgment and decree entered therein upon stipulation of the parties upon the ground of fraud and for the further reason that the decree, in so far as it attempted to subrogate the surety companies to the rights of the minors in the lands recovered and to impose a lien thereon, was outside the issues raised by the pleadings in cause No. 1532, and was void for the reason that the district court had no authority to enter such a decree. This petition to vacate was denied June 8, 1921. Upon trial of the instant case a decree was entered denying the surety companies any right of subrogation and denying foreclosure of a lien upon the lands here involved. To reverse this last judgment the instant proceedings have been prosecuted by petition in error with case-made attached.

Stanard & Ennis, for plaintisff in error.

Blanton, Osborn & Curtis, for defendants in error.

Opinion by LOGSDON, C. Only one proposition is presented and argued seriously by plaintiffs in their brief, and that is the proposition stated in the tenth assignment of error as follows:

"That said court erred in not holding as a matter of law by rendition of proper judgment that as to the defendants in error, Alpha Cash, Patterson Shi Cash, Thomas L. Farriss, and A. H. Shi, the judgment rendered in the district court of Garvin county, Okla. on the 8th day of June, 1921, in said cause No. 1532, entitled Alvin F. Pyeatt, Guardian, et al. v. Southwestern Surety Co., a Corporation, et al., refusing to vacate and modify the judgment rendered by the district court of Garvin county, Okla., in said action, on the 29th day of January, 1914, was res adjudicata of all questions raised and presented by said defendants in error in this action, and that said defendants in error were estopped thereby from denying the validity of said judgment so rendered in case No. 1532."

It appears that the minors, Tyree Cash, Minnie Ruth Cash, and Irene Cash, and the guardian, Alvin F. Pyeatt, were not parties to the motion or petition to vacate judgment in cause No. 1532, and are therefore not included within the terms of the order denying same. Only Alpha Cash,

Patterson Shi Cash, and their grantees, T. L. Farriss and A. H. Shi, were petitioners in that proceeding. As to these four defendants it is earnestly insisted that the order of June 8, 1921, denying the petition to vacate the judgment of January 29, 1914, is res adjudicata and operates as an estoppel to question the validity of said judgment on which plaintiffs base their right of subrogation and their claim of lien in this instant action. Two questions naturally present themselves in the consideration of this contention: (1) Granting the validity of the plea of res adjudicata, do the facts disclosed by the record present equities entitling plaintiffs to be subrogated under the final judgment in cause No. 826? (2) Is the lien here sought to be foreclosed such a lien as a court of equity had power to declare and establish at the time it assumed to do so?

Subrogation, being based upon principles of equity and good conscience, its enforcement must be consonant with right and justice. Unless plaintiffs have shown themselves entitled to this equitable consideration they cannot enforce subrogation against the legal rights of the defendants. As is said in Bispham's Principles of Equity, section 338:

"The right of subrogation being an equitable one, it is consequently subject to the general qualification by which all equities are affected:—namely, that it must not be enforced to the detriment of equal or superior equities existing in other parties, nor where its enforcement would operate to the prejudice or injury of the creditor; and cannot, therefore, be insisted upon until the creditor is fully paid and satisfied. And it has been said that it will not be enforced against a legal right."

In the instant case, prior to the fraudulent sale by the guardian, for whose acts these plaintiffs were sureties, the minor wards held title in fee and unincumbered to the lands here involved. By the final judgment in cause No. 826 (Pyeatt et al. v. Estes et al., 72 Okla. 160, 179 Pac. 42), they recovered title and possession of these lands, but with an incumbrance of $15,000 thereon. The amount paid to those minors by these plaintiffs under the judgment in cause No. 1532 was the sum of $9,318. Whatever may have been the view of the trial court as to the probable result of the proceeding in error in cause No. 826, as justifying the judgment for subrogation in cause No. 1532, it is clearly evident that when that final decision was rendered it left equities in the minor wards superior to those here asserted by plaintiffs under the judgment of subrogation. Plaintiffs

merely discharged their legal and contractual obligations by paying the $9,318, while the minor wards were compelled to pay $15,000 to clear the title to their lands, which would not have been incumbered but for the fraudulent and criminal acts of the guardian for whom plaintiffs were sureties. The minor wards, who stand in the relation of creditors, have not been fully paid and satisfied, and to enforce the right of subrogation against them under such circumstances would be to prejudice and injure them in their legal rights, as well as to wholly ignore their superior equities.

This claim of plaintiffs would be clearly enforceable against any property of the absconding guardian through subrogation to the rights of the wards against it. They being creditors, or standing in that relation at least, and having received the full amount for which plaintiffs were legally and contractually bound, their rights of recourse against the property of the absconding guardian would inure it to the benefit of plaintiffs, under the doctrine of subrogation, to the extent of the payment so made. No authority has been called to the attention of this court which would authorize a surety, after making good the default of his principal, to recover back the amount so paid from the creditor receiving the payment. This is the effect of the claim of subrogation in this case.

Is the lien here sought to be foreclosed such a lien as a court of equity had power to declare and establish at the time it assumed to do so?

The judgment fixing and establishing the lien was entered January 29, 1914, and the action in which it was entered was one to recover on the bonds of the defaulting guardian. It is indubitable that the court had jurisdiction of the action on the bonds of the guardian, and judicial power to determine and fix liability thereon, but did it have judicial power in that action to impress a lien upon the lands of these minor Indians? The lien which is sought to be enforced became a part of the judgment by stipulation entered into by attorneys for the new guardian and those representing the surety companies, and which stipulation was approved by both the county and district judges. Could this stipulation confer such jurisdiction? It has been often determined by this and the federal courts that the disability of minority imposed by section 2 of the Act of Congress of May 27, 1908, (35 St. at L. 312), is in the nature of a restriction on alienation as to minor allottees and minor heirs. Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846; Bell

v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; Brewer v. Perryman, 62 Okla. 176, 162 Pac. 791; Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 Pac. 729; Truskett v. Closer, 198 Fed. 835; Priddy v. Thompson, 204 Fed. 955; Barbe v. Hood, 228 Fed. 658. By section 5 of this act "any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney or **other instrument or method**" of the lands of allottees prior to removal of restrictions is expressly prohibited and declared to be "absolutely null and void." The written stipulation entered into by the attorneys for the parties in cause No. 1532, and approved by the county judge, was an "instrument", and its incorporation in the judgment of the district court was a "method" of incumbering allotted lands prior to the removal of the minority restrictions against alienation or incumbrance. It was an "instrument" and "method" not only unauthorized but expressly prohibited by federal law. Under the state Constitution and statutes, district courts have no original probate jurisdiction, and by sections 2 and 6 of the above-mentioned act, jurisdiction to lease or alienate the lands of minor allottees is vested exclusively in probate courts. An incumbrance is an alienation pro tanto. In Crowe v. Hardridge, 73 Okla. 136, 175 Pac. 115, this court said:

"It is contended on behalf of plaintiff that the judgment in favor of Lewis B. Malone quieting title in him was improvidently set aside and remains in full force and effect. We do not deem it necessary to determine this question, since, in the view we have taken of the status of the defendant, Hardridge, these lands could only be alienated pursuant to an order of the county court having jurisdiction, and the district court was without jurisdiction to divest him of his title." Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; Brewer v. Dodson, supra.

It is not contended by plaintiffs that this judgment of the district court, attempting to fix a lien on the lands of these minors, had any validity or that the court had judicial power at the time to render such a judgment. Their sole contention is that the order of the same court, thereafter made and entered on June 8, 1921, denying the petition of two of the wards who had become of full age, and their grantees, praying a vacation of such void judgment, unappealed from, now operates as an estoppel under the plea of res adjudicata set up in plaintiffs' reply in the instant action. In support of this contention plaintiffs rely on three recent decisions

of this court, to wit: Welch v. Commercial National Bank, 90 Okla. 221, 217 Pac. 476; Johnson v. Ray, 101 Okla. 160, 222 Pac. 667; Bucy v. Corbin, 101 Okla. 124, 223 Pac. 134.

A careful consideration of the Welch Case, supra, and an examination of the single authority relied on in that opinion to support the conclusion there reached, will demonstrate the fallacy and error of the reasoning leading to that conclusion. Susie Welch was born May 23, 1894, and on November 29, 1907, December 20, 1907, and June 28, 1909, executed separate deeds to different tracts of land included in her allotment. On April 21, 1911, the district court of Muskogee county rendered a judgment quieting the title of a subsequent purchaser under one of these conveyances. After reaching full age Susie Welch filed her petition to vacate the judgment of April 21, 1911, and on December 17, 1913, this petition was denied and overruled, and no appeal was prosecuted. Afterwards Susie Welch commenced her action, to recover the lands covered by the judgment of April 21, 1911, and defendants interposed a plea of res adjudicata, which was sustained by the trial court. In the opinion affirming this judgment it is stated:

"The only question for determination is whether a judgment rendered by the court on a petition to vacate a judgment is res adjudicata of the questions presented."

The real question which should have been determined may be stated thus:

"If a court, by reason of positive law, is without judicial power to render a certain judgment, but does so, is its judicial power enlarged by its subsequent action in adhering to its void proceeding on a motion to vacate?"

In support of the conclusion that the order denying the petition to vacate the void judgment was res adjudicata in the subsequent action brought by the allottee to recover the land, the writer of the Welch opinion quoted the fourth paragraph of the syllabus in the case of McDuffie v. Geiser Mfg. Co., 41 Okla. 488, 138 Pac. 1029, as follows:

"The question of jurisdiction over the defendant Geiser Manufacturing Company was by said defendant directly put in issue by its motion to vacate and set aside the former judgment of December 9, 1907. A hearing thereon being had, the motion was overruled, and the court's judgment became final. Held, in a subsequent trial between the same parties, concerning the same subject-matter, that the judgment so rendered was conclusive upon said de-

fendant, and that the question of jurisdiction could not again be considered, though grounds therefor existed that were not before, but could have been, urged."

The Geiser Case was an action to foreclose a mortgage on land in Alfalfa county. There was no question of the judicial power of the court to decree foreclosure in that case. The judgment was not void, but voidable because of defective service by publication on the nonresident defendant Geiser Manufacturing Company. On the motion to vacate, the facts which would have shown the service to be void, were not pleaded and put in issue, though they could have been. In speaking of the situation presented by the motion to vacate, Justice Sharp said:

"It had elected its forum, chosen its ground of attack, and the facts pertaining to its having appointed an agent were within its own knowledge. It should have tendered the issue that, as a nonresident corporation having a resident agent, service by publication could in no event be had upon it. It chose, however, to litigate the question of jurisdiction over it upon other grounds, and for other reasons, notwithstanding the primary question involved in both courts at all times was that of jurisdiction."

It is clearly evident that the principles of law, which govern and control where jurisdiction of the person is the question to be determined, are entirely distinct and different from those which govern and control where the question of jurisdiction is dependent on the judicial power of the court to render a particular judgment. The first involves a question of fact, the latter a question of law. In the first class the judgment may be declared void upon proper facts being shown, but until successfully assailed the judgment is not void; it is merely voidable. In the latter class the judgment is void because the law has withheld from the court judicial power to render the particular judgment.

In concluding his opinion in the Welch Case, Justice Cochran said:

"The plaintiff executed a deed to the lands in controversy, which the court found to be valid, and, thereafter, a court of competent jurisdiction, with full authority to act in the matter, adjudged that the former judgment was valid, and no appeal was taken. This was a judicial determination of the validity of the proceedings which cannot now be questioned."

The deed which was found to be valid had been executed by a minor allottee, and Congress had, in effect, said that no court should have power to pass upon the validity or invalidity of such a conveyance, but that the same should be **"absolutely null and void."** Upon petition to vacate the judgment the trial court had no greater power to instill life and vitality into the conveyance by an order than it had in the first instance by its void judgment. In 15 R. C. L. 845, sec. 317, the law, as reflected by decisions cited from nearly every state court and the Supreme Court of the United States, is thus stated:

"Jurisdiction of the subject is the power conferred upon courts by law to hear a particular class of cases, or to determine controversies of a specified character. This jurisdiction is indispensable to the validity of a judgment, and where a court has no jurisdiction of the subject-matter, the judgment is void, and may be so treated in collateral proceedings. It may be added that jurisdiction of the subject-matter cannot be conferred by the assent or neglect of the parties, nor will any amount of judicial discretion of a court supply a defect of want of jurisdiction in a case."

A motion or petition to vacate is a statutory method of direct attack, just as are appeals or proceedings in error, and can have no greater force or effect as res adjudicata. In section 320, Id., it is stated:

"The affirmance of a void judgment is also void as are all proceedings to enforce the affirmed judgment by execution and sale, and where a judgment is void because the court had no jurisdiction, an affirmance of the judgment on appeal will not cure the defect or give life to the invalid judgment."

If the reasoning of the Welch Case is sound then any grantee in a void conveyance of Indian lands, after procuring a void judgment declaring the conveyance valid, may render such void judgment impervious to collateral attack by himself filing motion to vacate, procuring an order overruling same, and failing to appeal from such order. The law is not so lame and impotent as to be thus flouted. As said by Justice Sharp in Brink v. Canfield, 78 Okla. 189, 187 Pac. 223:

"Any other view would mean the circumvention of the statute prescribing the manner in which such lands may be alienated, and make nugatory the acts of Congress."

There can be no question in this state at this late day of the supreme power of Congress to legislate concerning Indians and their property. Where Congress has spoken, and in effect has denied to every court the power to determine the validity of a conveyance of title or of any interest in the lands of minor Indians, by declar-

ing all such conveyances "absolutely null and void." If not made in the course of probate proceedings, any judgment purporting to establish the validity of such a prohibited conveyance is coram non judice and void. Being so, the lack of judicial power inheres in every stage of the proceedings by which color of authority is sought to be imparted to the void judgment, and a subsequent order by the same court denying a motion to vacate such void judgment is likewise void for the same reasons. Such an order contains but three of the essential elements of estoppel by judgment. In Bigelow on Estoppel (6th Ed.) page 52, the author sets forth the six essential elements of estoppel by judgment as follows:

"1. In order to an estoppel by res adjudicata there must have been a judgment. ·2. In the next place the judgment must have been valid. If for want of jurisdiction, or for any other reason, it was void, it will have no effect, though it is otherwise, as we shall see, if it was only voidable. 3. Further, a judgment, in order to work an estoppel against another litigation upon the same cause of action, must have been rendered upon the merits of the cause. If the decision was rendered upon a mere motion, or a summary application, or if the cause was dismissed upon some preliminary ground * * * the parties are at liberty to raise the main issue again in any other form they choose. 4. The judgment, further, should have been final. 5. In the next place the judgment should be in force at the time of the alleged res adjudicata. 6. Finally, it is of the essence of this kind of estoppel that the subject of it should be certain."

In the instant case, as in the Welch Case, the only essential elements of estoppel contained in the order denying the motion to vacate the prior judgment are the first, fourth and sixth above named. The opinion in the Welch Case, being unsupported by any authority and being in conflict with the prior uniform holdings of this and the federal courts upon the question of the supreme power of Congress to legislate concerning Indians and their property, cannot be considered as controlling in the instant case. The same may be said as to the cases of Johnson v. Ray, supra, and Bucy v. Corbin, supra, in so far as they derive support and authority from the Welch Case. Other authorities relied on by plaintiffs do not deal with the question here determined.

It is therefore concluded that the judgment of the district court of Garvin county in cause No. 1532, rendered January 29, 1914, being void for want of jurisdiction

in that the court was without judicial power to render that particular judgment, its order thereafter entered June 8, 1921, overruling the motion or petition to vacate the same did not create an estoppel by judgment and is not res adjudicata as to the questions presented in the instant action. The judgment of the trial court in the instant action is therefore affirmed.

PER CURIAM. Having carefully read and · considered the foregoing opinion by LOGSDON, C., the same is approved and adopted by the court. Upon the reasoning and authorities in this opinion, the cases of Welch v. Commercial National Bank, 90 Okla. 221, 217 Pac. 476, Johnson v. Ray et al., 101 Okla. 160, 222 Pac. 667, and Bucy v. Corbin et al., 101 Okla. 124, 223 Pac. 134, are hereby expressly overruled upon the questions of estoppel by judgment and res adjudicata as affecting void conveyances or incumbrances of the lands of Indians under restrictions.

Note.—See under (1) 37 Cyc. p. 371. (2, 3) 31 C. J. p. 513 § 79. (4) 34 C. J. p. 768 § 1183.