[Sac. No. 1080. In Bank.—May 11, 1904.]

ADELIA COOK, Appellant, v. GEORGE T. CEAS, C. P. HENSLY, and P. H. GARDINER, Defendants; P. H. GARDINER, Respondent.

GUARDIAN AND WARD—PREMATURE ACTION UPON BOND—FINAL DETERMINATION OF ACCOUNTS—TIME FOR APPEAL.—An action will not lie upon the bond of a guardian until the order settling his accounts becomes final either by the lapse of the time for appeal therefrom or the final determination of an appeal taken therefrom; and an action brought upon such bond by an adult ward after an order settling the accounts of the guardian, but before the expiration of the time for appeal therefrom, is premature.

ID.—CONSTRUCTION OF CODE—SETTLEMENT OF ACCOUNTS A "PROCEEDING." —The settlement of the accounts of a guardian is a "proceeding" within the meaning of section 1049 of the Code of Civil Procedure.

ID.—STATUTE OF LIMITATIONS—FINAL DISCHARGE OF GUARDIAN.—The statute of limitations of three years, fixed by section 1805 of the Code of Civil Procedure against the sureties on the bond of a guardian, does not begin to run until the final discharge or removal of the guardian by an order of the court.

ID.—ADULT AGE OF WARD.—The fact that the ward became an adult more than three years before the settlement of the accounts of the guardian in the probate court, though it operated to suspend the authority of the guardian, did not operate as a discharge of the guardian within the meaning of section 1805 of the Code of Civil Procedure or set that special statute in motion.

ID.—STATUTE OF LIMITATIONS—CONSTRUCTION—INEQUITABLE OPERATION.
—A statute of limitations should not be enlarged in its operation
by judicial construction so as to embrace a class of cases not com-
prehended in its terms, where by such enlargement it would be
capable of working inequitably.

ID.—RIGHTS OF SURETIES—GENERAL STATUTE—REASONABLE DILIGENCE.
—Though the sureties cannot avail themselves of the statute of
limitations prescribed by section 1805 of the Code of Civil Pro-
cedure, unless they are within its terms, they are not without
protection against stale claims. They may avail themselves of the
general statute, and of the rule requiring reasonable diligence from
an adult ward in procuring settlement of the guardian's accounts.

APPEAL from a judgment of the Superior Court of Sac-
ramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

W. A. Gett, for Appellant.

A. L. Shinn, and R. Platnauer, for Respondent.

BEATTY, C. J.—Hensly and Gardiner were sureties on
the bond of Ceas as guardian of the plaintiff, and the action
is to recover three thousand dollars, the full penal sum named
in the bond, the probate court having determined on settle-
ment of the guardian's final account that he was indebted to
his ward in excess of that amount. Ceas and Hensly, al-
though named as defendants, were never served, and Gar-
diner alone defended the action. His defense was based upon
two grounds: 1. That the action was commenced prema-
turely; and 2. That the action was barred by the special
limitation prescribed for actions upon guardians' bonds by
section 1805 of the Code of Civil Procedure, which reads as
follows:—

"No action can be maintained against the sureties on any
bond given by a guardian, unless it be commenced within
three years from the discharge or removal of the guardian;
but if, at the time of such discharge, the person entitled to
bring such action is under any legal disability to sue, the
action may be commenced at any time within three years
after such disability is removed."

The facts upon which the first defense is founded are
these: The order or decree of the probate court settling the

account of the guardian, and determining the amount of his indebtedness to plaintiff, was entered as a final order of that court on the twenty-fourth day of January, 1901, and the action was commenced January 30, 1901,—i. e. within the sixty days allowed by law for taking an appeal from the order settling the account.

The facts upon which the second defense are founded are, that the plaintiff attained her majority April 30, 1897, and the action was not commenced until more than three years thereafter,—to wit, January 30, 1901. In this connection it is claimed that by the coming of age of his ward the guardian was *ipso facto* removed or discharged, within the meaning of of those terms as employed in section 1805 of the Code of Civil Procedure, above quoted, and consequently that the three years limited for the commencement of this action began to run from April 30, 1897, and fully elapsed April 30, 1900.

Upon the facts, as here stated, the superior court sustained both defenses, holding that the action had been prematurely commenced, and at the same time that it was barred by the statute. (Code Civ. Proc., sec. 1805.) Judgment was entered accordingly, and the plaintiff appeals.

It is claimed that the judgment of the court is founded upon two conclusions so manifestly inconsistent that both cannot stand. So far as an affirmance of the judgment is concerned, it is immaterial whether this inconsistency exists or not, for if either conclusion is correct—if the action was commenced too soon or commenced too late—the judgment for the defendant must stand. We do not, however, concede that the two conclusions of the superior court are necessarily inconsistent, for it is a legal possibility that the commencement of an action may be premature, and at the same time too late, in view of some special statute of limitations.

The general rule prescribing the time when the period of limitation begins to run against a cause of action fixes it at the date when the cause of action accrues (Code Civ. Proc., sec. 312), but this general rule is by the same section of the code expressly declared to be subject to such different rules as may be prescribed for special cases. In such special cases the date when the statute begins to run may be fixed with-

out reference to the accruing of the cause of action, and if for any reason the cause of action does not mature until the statute has fully run, a plaintiff might commence his action after it was barred and before the right of action had accrued. This apparently anomalous condition of things is clearly illustrated by the reasoning of the court in the case of *Hunt* v. *Ward,* 99 Cal. 612.[1] The individual liability of · every stockholder of a corporation for his proportion of its debts is imposed by a provision of the constitution (art. XII, sec. 3), but by a special statute of limitations (Code Civ. Proc., sec. 359) the action against a stockholder to enforce this liability must in many cases be commenced within three years after the liability is created. It was argued in that case that to give effect to this section of the code according to its literal terms would bring about the result in many cases that an action against the stockholders would be barred before the debt fell due; as, for instance, where money was borrowed upon bond or note of the corporation maturing more than three years from date. But the court, assuming that in such case the creditor would have no action except upon the bond or note, declared that he would have practically waived the liability of the stockholders by putting himself in a position where his cause of action would not mature before the bar of the statute had interposed.

They did not decide, and of course could not have decided, · that in the case supposed there would be no liability on the part of the stockholders; for when the constitution says that stockholders shall be liable for· their proportion of *all* debts of the corporation it is not competent for the legislature to say, directly or indirectly, that they shall be liable for such debts only as mature within three years.

But it is not alone in cases arising under special statutes of limitation that an action may be barred before the cause of action is complete. Even in cases which fall under the general rule which sets the statute in motion when the cause of action accrues, an action may be barred before the cause of action is complete, and may be prematurely commenced after the bar of the statute has attached. If, for instance, a debt is expressly made payable twenty days after demand, the creditor is not allowed to defeat the policy of the statute

---

[1] 37 Am. St. Rep. 87.

by unreasonable delay in making demand. He cannot keep
the obligation alive for ever by failing to do an act within
his power. And so with respect to any case where a demand
and refusal of performance is essential to the cause of action
an unreasonable delay in making demand will not prevent
the running of the statute. (*Barnes* v. *Glide*, 117 Cal. 2.[1])
It was upon the doctrine of this class of cases, many more
of which might here be cited, that the superior court founded
the two conclusions supposed to be so irreconcilable. That
they are not necessarily inconsistent I think has been suffi-
ciently shown, but it still remains to be considered whether
they, or either of them, can be sustained.

As to the first defense, it is conceded by the appellant that
according to the settled rule in this state an action against a
guardian or his sureties for breach of his bond cannot be
commenced until the amount of his indebtedness has been
determined by an order of the probate court. The same rule
prevails in respect to actions against the sureties upon the
bonds of executors and administrators, and in each case it
rests upon the ground that the probate court has been in-
vested with exclusive jurisdiction to settle accounts of admin-
istrators, executors, and guardians, and that until the amount
due to the ward or distributees has been determined by order
of that court, and payment demanded, there is no default on
the part of the trustee, and no cause of action against him or
his sureties. Among the cases bearing upon this point, the
following may be referred to: *Graff* v. *Mesmer*, 52 Cal. 636;
*Trumpler* v. *Cotton*, 109 Cal. 250; *Reither* v. *Murdock*, 135
Cal. 197; *Allen* v. *Tiffany*, 53 Cal. 16; *Chaquette* v. *Ortet*,
60 Cal. 594; *Spencer* v. *Houghton*, 68 Cal. 82. So far the
rule is clear and is conceded, but the appellant does not con-
cede the further proposition, essential to the conclusion of
the superior court, that this action was premature because,
notwithstanding an order had been entered by the probate
court settling the guardian's account, the time for appealing
from that order had not elapsed when the complaint was
filed.

The argument against this proposition is, in brief, that this
is not an action on the judgment or order settling the guard-
ian's account, but is an action on the bond of the sureties, in

[1] 59 Am. St. Rep. 153.

support of which the order of settlement is only needed as
evidence, and therefore that it is no obstacle to the commence-
ment of the action that the mere evidence of the obligation is
not yet complete. This argument seems to prove too much.
If the order of the probate court is only evidence in support
of the action and no part of its necessary foundation, why
delay the action until the probate court has acted? If that
court is only taking one of the steps toward perfecting evi-
dence to be used on the trial of the action, there would seem
to be no reason for holding that its order is an essential pre-
liminary to the commencement of the action. In truth, noth-
ing is gained to the argument by saying that this is a suit on
the bond and not on the order. A suit on a bond cannot be
commenced before there is any breach of the bond. It is not
the bond that constitutes the cause of action, but some breach
of the bond, and if a guardian is not in default until he fails
or refuses, on demand, to pay over the amount found due on
settlement of his accounts, then a final order of settlement
is an essential element of the cause of action against his
sureties.

The question, then, is reduced to this: When did the order
settling the account of the guardian become a binding order?
The numerous decisions of this court construing and apply-
ing section 1049 of the Code of Civil Procedure have settled
this question conclusively in accordance with the decision of
the superior court. "An action [or proceeding] is deemed
to be pending from the time of its commencement until its
final determination upon appeal, or until the time for an
appeal has passed." (Code Civ. Proc., sec. 1049.)

The settlement of a guardian's account is certainly a pro-
ceeding within the meaning of this section, and it is a
proceeding in which an appeal from the probate court to this
court may be taken at any time within sixty days after the
entry of the order. The proceeding, then, was pending when
this action was commenced, and it has been held here in a
great number and great variety of cases that so long as an
action or proceeding is pending in this sense the judgment or
order from which an appeal has been or may be taken can-
not be made the basis of any new action. (See *Estate of
Blythe,* 99 Cal. 472; *Naftzger* v. *Gregg,* 99 Cal. 83;[1] *Story*

---

[1] 37 Am. St. Rep. 23, and note.

v. *Story etc. Co.,* 100 Cal. 41; *Brown* v. *Campbell,* 100 Cal. 635.[1]) Many more decisions of this court to the same effect might be cited, but I content myself with referring to the recent case of *Feeney* v. *Hinckley,* 134 Cal. 467,[2] in which it was held that the statute of limitations does not commence running against an action upon a judgment of the superior court until the expiration of the time for appealing.

The effect of these numerous decisions is not in the least impaired by the fact that in some cases, and for some purposes, an appealable judgment may be offered in evidence. It may, of course, be offered in evidence whenever the mere fact that it has been entered is material; as, for instance, in support of a plea in abatement, or to show the regularity of an execution. Nor is the force of the rule as to finality of judgments at all affected by what was said in the concurring opinion of Justice Harrison in *Naftzger* v. *Gregg,* 99 Cal. 83.[3] He held, with the rest of the court, upon the proposition that the judgment in question was not a bar, but thought the ruling of the court admitting it in evidence was not necessarily erroneous, because the court, when making the ruling, could not anticipate that the party offering it would not prove that although the time for appealing had not elapsed, an appeal had nevertheless been taken and finally determined. But he went on to say that when the case was submitted without such additional evidence the court erred in holding that the judgment was a bar; thus expressly upholding the rule that an appealable judgment can never be made the foundation of a right of action or of defense to an action.

The justice of this rule is apparent from the fact that an appealable judgment might be reversed after having been used to sustain an action, or to bar an action. (*Story* v. *Story etc. Co.,* 100 Cal. 41.) It is a fact, though not shown by this record, that an appeal was taken from the order settling the account here in question after this action was commenced, but within the sixty days allowed for an appeal. (*Guardianship of Ceas,* 134 Cal. 114.) If that order had been reversed instead of affirmed, what would have been the *status* of this case? Clearly, it would have been necessary to dismiss it, for the effect of a reversal would have been to

---

[1] 38 Am. St. Rep. 314.          [3] 37 Am. St. Rep. 23, and note.

[2] 86 Am. St. Rep. 290.

relegate the proceeding for a settlement of the account to the stage it was in before any order was made by the probate court, and it is conceded that no action on the bond can be commenced in advance of the order of settlement. This being so, it follows that this action was begun prematurely; for the rule as to finality of judgments and orders does not vary according to the success or failure of an appeal. This conclusion would sustain a judgment affirming the judgment of the superior court, but we would not be justified in disposing of the present appeal without deciding the more important question whether the action was barred three years after the plaintiff came of age; for if we did she would be compelled to commence another action and prosecute another appeal to obtain a decision upon a question clearly presented upon this record.

For the purpose of determining this question we have only to ascertain the meaning of the expression "discharge or removal of any guardian," as employed in section 1805 of the Code of Civil Procedure. The provisions of that section, especially enacted for the protection of sureties on bonds of guardians, are prohibitory and peremptory in terms and effect. *No action* against them can be maintained unless it be commenced within three years from the *"discharge or removal"* of the guardian. The meaning of these words, as used in this connection, is determined by the sense in which they are employed in other sections of the same statute, including the provisions regulating the practice in probate cases, which are made applicable in guardianship proceedings. (Code Civ. Proc., sec. 1808.) It will be found that the word "discharge" is used sometimes in a sense peculiar to itself and sometimes in a sense exactly equivalent to that of the word "removal." An executor or administrator may obtain an order or decree that he has fully accounted and paid over to the proper parties the entire residue of the estate after payment of debts and expenses. Such a decree is called a discharge (Code Civ. Proc., sec. 1697), and its effect is to exonerate him and the sureties on his bond. This provision of the probate act being applicable to proceedings in guardianship, it follows that a guardian may obtain a similar decree of discharge exonerating him and his sureties, and this evidently is the discharge which the court is pro-

hibited from granting until one year after the ward's majority. (Civ. Code, sec. 257.) A guardian may settle with his ward the day after he comes of age and obtain his release, but he cannot have a decree of court confirming the settlement and release until the ward has had a year to consider whether he will affirm or repudiate it. (Civ. Code, sec. 256.) It seems very clear that the discharge contemplated by these provisions of the codes is not the discharge referred to in section 1805 of the Code of Civil Procedure, for it would be absurd to limit the time for bringing an action upon an order which determines that there is no liability—an order which renders it impossible to maintain an action. But there is another kind of discharge to which that section may be held to refer without imputing folly to the legislature. It is assumed in section 1753 of the Code of Civil Procedure that the guardian of a minor may be discharged of his office by order of court before the ward arrives at the age of majority or marries. The guardian of an insane person may be "discharged" by order of court when it appears that the guardianship is no longer necessary. (Code Civ. Proc., sec. 1802.) Guardians of either sort may be "removed" for incapacity or mismanagement, etc. (Code Civ. Proc., sec. 1801), and so for the same and other causes executors and administrators may be "removed." It will thus be seen that the words "remove" and "discharge" are used indiscriminately in the statute to designate orders of court which have the effect of simply removing guardians, executors, etc., from office without exonerating them from liability to account. To such orders section 1805 has a just and reasonable relation, and no doubt it is to them that it refers. As to the word "removal," there can be no doubt that the reference is to an order removing the guardian from office, and as discharge is sometimes used in the statute in the sense of removal, it is here to be construed in that sense on the principle of *noscitur a sociis.* There is still another view in which this construction appears most reasonable. There are guardians of minors and guardians of insane. The former are deprived of office by "removal," the latter by "discharge." Section 1805 applies equally to bonds of either class, and declares in one breath that an action against the sureties of a guardian of an insane person must be commenced within three years after his

discharge, and one against the sureties of the guardian of a minor within three years after his removal.

For these reasons we conclude that an action against the sureties of a guardian is not *by the terms of section 1805* barred until three years after a final order of court removing or discharging the guardian. By the terms of the statute, therefore, this action was not barred, for it does not appear, and it is not claimed, that the guardian of plaintiff ever was discharged or removed by any order of court. The respondent contends, however, that the coming of age of the plaintiff operated a discharge of the guardian, and set the statute in motion April 30, 1897.

It is certainly true that when a ward arrives at the age of majority the authority of the guardian comes to an end. Section 255 of the Civil Code says that it is suspended; but it is suspended without the possibility of restoration, and in reality ended. (*In re Allgier,* 65 Cal. 228; *Estate of Curtis,* 121 Cal. 469.) But although his authority is at an end when his ward comes of age, it cannot be said that in any ordinary or usual or statutory sense of the terms he has been removed or discharged, so that the statute does not in terms apply to such a case, and in order to bring the respondent within its protection its terms must be enlarged by construction. In other jurisdictions this seems to have been done. In the state of Montana it was held, construing a statute identical in terms with our own, that the death of the ward operated a discharge of the guardian, and set the statute in motion. (*Berkin* v. *Marsh,* 18 Mont. 152.[1]) In Massachusetts no action can be maintained against the sureties on a guardian's bond unless it be commenced within four years "from the time when the guardian shall be discharged." Chief Justice Shaw, in construing this statute, said: "The court are of opinion that by the term discharged in this statute is intended any mode by which the guardianship is effectually determined and brought to a close either by the removal, resignation, or death of the guardian, the marriage of a female, the arrival of a minor ward at the age of twenty-one, or otherwise." (*Loring* v. *Alline,* 9 Cush. 68.) This construction of the statute, in substance identical with our own, has been followed in other cases in Massachusetts, and reaffirmed as

---

[1] 56 Am. St. Rep. 565.

late as *McKim* v. *Mann,* 141 Mass. 507. The same construc-
tion has been placed upon similar statutes in Michigan and
Wisconsin, and perhaps other states. On the other hand, the
supreme court of Texas has in several cases refused to extend
the operation of a similar statute beyond its literal terms,
adhering firmly to the doctrine stated in *Marlow* v. *Lacey,*
68 Tex. 154, to the effect that the statute does not begin to
run in favor of the sureties until the guardian has been re-
moved or discharged by order of court in one of the cases
provided for in their Code of Procedure. The weight of
authority, it must be conceded, is on the side of respondent,
but we are disinclined to follow the construction adopted in
Massachusetts, Michigan, Wisconsin, etc., for a reason not
adverted to in some of the decisions, and not allowed suffi-
cient weight, as we think, in those cases where it has been
adverted to.

A statute of limitations ought not to be enlarged in its
operation by judicial construction when it is so framed as to
work injustice either by itself or in conjunction with other
provisions of law. In this state we have one rule which pro-
hibits an action on the bond of a guardian's surety until there
is a final order settling the guardian's account, and another
rule barring the action in three years after the removal or
discharge of the guardian. So far as its express terms re-
quire, the rule must no doubt be enforced, even where with-
out the fault of the ward a final settlement of the account has
not been obtained within three years after the removal or dis-
charge, but neither justice nor sound policy requires that a
law capable of working so inequitably should be enlarged by
construction so as to embrace a class of cases not compre-
hended in its terms. And this conclusion does not leave the
sureties on guardians' bonds without an ample measure of
protection against stale claims. They have all the advantage
of the general statute of limitations, and of the doctrine of
*Barnes* v. *Glide,* 117 Cal. 1,[1] which will hold wards to the
rule of reasonable diligence in procuring settlement of their
guardians' accounts. In this case it does not appear whether
or not there was unreasonable delay on the part of the plain-
tiff in seeking a settlement of the account.

The judgment of the superior court is affirmed on the

[1] 59 Am. St. Rep. 153.

ground that the action was prematurely commenced, and without prejudice to another action.

Lorigan, J., McFarland, J., and Henshaw, J., concurred.

VAN DYKE, J., dissenting.—I dissent, and adhere to the opinion in said case in Department, and hereby adopt the same.

The following is the opinion rendered in Department One on the 2d of June, 1903, referred to and adopted in the dissenting opinion of Van Dyke, J.:—

VAN DYKE, J.—This is an action upon a guardian's bond. The principal on the bond, George T. Ceas, and one of the sureties, C. P. Hensly, defaulted and took no part in the trial of the cause. The court below rendered judgment in favor of defendant Gardiner, the other surety on the bond, and against the plaintiff. The appeal is from this judgment and is taken upon the judgment-roll. Appellant contends that upon the facts admitted and found the judgment should have gone for the plaintiff.

It is alleged in the complaint that upon April 2, 1883, the superior court of Sacramento County, having jurisdiction of the matter, by an order duly given and made, appointed the defendant George T. Ceas the guardian of the person and estate of the plaintiff, his daughter, she having property in her own right, and being a minor under the age of fourteen years, and required the said guardian to enter into a bond in the penal sum of three thousand dollars; that thereafter the bond, as required by said order, was entered into by the said Ceas as principal, and the defendants Hensly and Gardiner as sureties, in the usual form and in the sum mentioned in the order. It is further alleged that the plaintiff married W. R. Cook in October, 1899, and is now his wife, but that the money claimed against the defendants is her separate property. It is further alleged, and found by the court to be true, "That such proceedings were thereafter had in the superior court of said Sacramento County, that the final account of said George T. Ceas, as guardian of plaintiff, was rendered, settled, and allowed by said superior court of Sacramento County, by its decree duly made, given, and entered

on the twenty-fourth day of January, 1901, and whereby it
was ascertained and determined by said superior court of
Sacramento County that there was a balance due from said
defendant George T. Ceas, as guardian of plaintiff, to plain-
tiff herein of three thousand one hundred and fifty and forty-
seven hundredths dollars ($3,150.47), and the said superior
court of Sacramento County then duly made and entered its
decree that Adelia Cook, formerly Adelia Ceas, plaintiff
herein, do have and recover from said George T. Ceas, de-
fendant, as guardian of plaintiff, the said sum of $3,150.47,
which sum was for moneys received by said George T. Ceas,
as guardian of plaintiff." It is further alleged, and found
to be true by the court, that neither said Ceas, as principal,
nor said Hensly, as surety, had paid said sum of money so
found to be due, or any part thereof, and that after the mak-
ing of said order, and before the commencement of this action,
the plaintiff demanded of the defendant P. H. Gardiner pay-
ment of the said amount specified in said bond,—to wit, three
thousand dollars,—and that the said Gardiner refused, and
still refuses, to pay the same or any part thereof.

The court further finds that at the time the complaint in
this action was filed the order settling the final account "had
not become a final order, and would not be until sixty days
after the entry of the same, and consequently this action was
prematurely brought"; and also, "that the court finds that
the plaintiff's cause of action is barred by the provision of
section 1805 of the Code of Civil Procedure of the state of
California, for the reason that said minor reached her major-
ity more than three years (to wit, April 30, 1897), before
this action was commenced."

These so-called findings are mere conclusions of law drawn
by the court from the facts admitted and found as already
referred to. It is quite apparent that these conclusions of
law are contradictory, and necessarily both cannot stand. If
the action were prematurely brought,—that is, before the
cause of action accrued,—it could not well be said that it was
at the same time barred by the lapse of time. Section 1805 of
the Code of Civil Procedure, referred to in the so-called find-
ing, declares that no action can be maintained against the
sureties on any bond given by a guardian unless it be com-
menced within three years from the discharge or removal of

the guardian, unless the person at the time is under some legal disability to sue.

The theory upon which the court assumed that the cause of action was barred seems to have been predicated upon the assumption contended for by respondent's counsel in his brief, that upon the arrival of the ward at the age of majority the guardian was *ipso facto* discharged or removed. Such a result, however, does not follow upon the ward's arriving at majority or marrying. In the event of marriage the powers of the guardian are merely suspended as to the person of the ward, but not affected as to the estate. (Civ. Code, sec. 255; Code Civ. Proc., sec. 1751.) And where the guardian is appointed by the court, he is not entitled to his discharge as to the estate until a year after the ward's majority. (Civ. Code, sec. 257.) Here, however, it is expressly found that no order or decree had ever been entered discharging or removing said guardian; nor could such order have been made before the settlement of his final account. (Code Civ. Proc., secs. 1697, 1808.)

And the plaintiff's cause of action did not accrue either as against the guardian or the sureties on his bond until the settlement of the guardian's account and the ascertainment of the amount due from him to his ward. "The general rule is, that the liability of the surety on an administrator's or guardian's bond depends upon the liability of the principal, and does not attach until that has been ascertained and determined by the judgment of a court of competent jurisdiction. This rule has been repeatedly announced and affirmed in this court." (*Reither* v. *Murdock*, 135 Cal. 197. See, also, *Allen* v. *Tiffany*, 53 Cal. 16; *Chaquette* v. *Ortet*, 60 Cal. 594; *Spencer* v. *Houghton*, 68 Cal. 82.)

Although the guardian had the right to appeal within sixty days from the judgment or order settling his final account, there is no evidence that he did appeal. On the contrary, it may be presumed he did not, for it is recited in the findings that he failed to appear at the trial.

Conceding that the order in the probate court settling the guardian's account may be construed as a judgment, and that a judgment does not become final for many purposes until the time to take an appeal has expired, yet for many purposes it does take effect and is in full force from the time

it is rendered and entered in the trial court. Harrison, J., in *Naftzger* v. *Gregg,* 99 Cal. 88,[1] says in reference to the admission of a judgment in evidence in that case: "It was a judgment that had been rendered between the same parties upon the same cause of action, and by a court of competent jurisdiction, and unless it is to be held that a judgment is not, under any circumstances, admissible in evidence until the time for an appeal therefrom has expired, the court properly received it. Section 1049 of the Code of Civil Procedure does not purport to prescribe a rule of evidence, but merely to determine the condition of an action after judgment has been rendered, and, inferentially, the effect of the judgment; and there are many cases in which a judgment is admissible in evidence at any time after its entry." A judgment may be executed as soon as entered, although the time for appeal has not expired, or even after an appeal has been taken therefrom, unless it be stayed by a proper undertaking. So, a judgment of divorce, it has been held, is effective to dissolve the marriage tie when it is rendered and entered upon the minutes. (*In re Cook,* 83 Cal. 415.) Besides, there is nothing in the record to show that any appeal was actually taken from the order settling the account. It cannot be presumed in aid of the judgment, in the absence of either allegation or finding to that effect, that an appeal was taken. It is therefore to be presumed that before the trial of this action the order had become final by lapse of time. At the time the order was made it had all the attributes of a final order, but was subject to the condition that it might be vacated on appeal. When the liability to this condition ceased by the expiration of the time for taking an appeal, the order became final as from its date, and was a sufficient foundation upon which to maintain an action on the bond. The case is somewhat analogous to that of a plea in abatement, in which, although the action pleaded in abatement may be pending at the time of the filing of the plea or answer, yet if at the time of the trial it has been dismissed, or otherwise ceased to be a pending action, the second action does not abate. (*Dyer* v. *Scalamini,* 69 Cal. 637; *Moore* v. *Hopkins,* 83 Cal. 270;[2] *California S. and L. Society* v. *Harris,* 111 Cal. 137.)

In this case an issue was raised by the pleadings as to the

---

[1] 37 Am. St. Rep. 23, and note.      [2] 17 Am. St. Rep. 248.

settlement of the guardian's account, and the order settling the same must have been admitted in evidence to justify the finding that it had been rendered and settled as stated. This action is not upon the judgment or order settling the account of the guardian, but upon the guardian's bond. The bond, as required by the code (Code Civ. Proc., sec. 1754), contained, among other things, the condition that at the expiration of the trust of the guardian he should have his account settled by the superior court, and pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him in such settlement, to the person or persons lawfully entitled thereto; and, as alleged and found herein, the court settled his account and found the amount for which the action is brought to be due the ward; and the failure to pay over this sum, as directed by the court, caused a breach of the bond, which is the foundation of this action.

The judgment is reversed and the cause remanded.