[Civ. No. 10019. First Appellate District, Division One.—September 23, 1936.]

ARTHUR W. KECK, Appellant, v. LIZZIE B. KECK et al., Defendants; JAMES P. SWEENEY et al., Respondents.

William P. Hubbard for Appellant.

James P. Sweeney, *in pro. per.*, and Dunne & Dunne for Respondents.

KNIGHT, J.—The plaintiff Arthur W. Keck, formerly an incompetent person, brought this action against his wife, Lizzie B. Keck, as guardian of his estate and person, and the sureties on her bond (one of whom has since died) to collect a sum of money shown to be due plaintiff upon the final settlement of the guardian's accounts. The guardian failed to appear or answer, and a default judgment was entered against her for the amount sued for, to wit, $1896.26, plus interest. ■■■ But the sureties, whose maximum liability was fixed by the bond in the sum of $1,000, contested the action and the trial court held that as to them the action was barred by the three-year statute of limitations fixed by the provisions of section 1805 of the Code of Civil Procedure (now section 1487 of the Probate Code). Accordingly judgment was entered in favor of the sureties, from which plaintiff prosecutes this appeal.

Section 1805 of the Code of Civil Procedure read as follows: "No action can be maintained against the sureties on any bond given by a guardian, unless it be commenced within three years *from the discharge or removal of the*

*guardian;* but if at the time of such discharge the person entitled to bring such action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed.'' (Italics ours.) In the present case all of the court proceedings leading up to the commencement of this action took place in the Superior Court in and for the City and County of San Francisco. They consisted of the following: In 1924 plaintiff was declared incompetent and his wife was appointed guardian of his person and estate in a guardianship proceeding instituted by his wife for such purpose; and in a separate proceeding plaintiff was adjudged insane and committed to the Napa State Hospital. Some two years after the appointment of the guardian and on April 19, 1926, in a proceeding instituted by plaintiff under the authority of section 1766 of the Code of Civil Procedure, he was restored to mental competency, and in the decree rendered therein it was ''ordered, adjudged and decreed that the guardianship of the person and estate of Arthur W. Keck, as an incompetent is hereby terminated''. Subsequently, and on December 22, 1926, plaintiff filed a petition in the guardianship proceedings for an accounting wherein he again asked for the termination of the guardianship proceeding and on January 18, 1927, an order and decree was made to that effect. Among other things it was therein ordered and decreed that the order heretofore made appointing the said Lizzie B. Keck guardian of the person and estate of said Arthur W. Keck, ''be, and said order is hereby revoked''; and it was further ordered that an accounting be had and that the court's jurisdiction over the guardian be retained until her accounts were settled. In response to such decree and order the guardian filed certain accounts, and on March 27, 1930, there was a final settlement thereof, showing she was indebted to plaintiff in the sum of $1896.26. The present action was filed on December 3, 1930. Thus it affirmatively appears that the action was commenced more than four years after the rendition of the decree of April 19, 1926, terminating the guardianship proceedings, and more than three years after the entry of the decree of January 18, 1927, in the guardianship proceedings revoking the powers of the guardian. Manifestly these decrees and especially the latter operated as a removal of the guardian, and set in motion the statute of

limitations prescribed in said section 1805. The trial court properly held, therefore, that the action against the sureties was barred by the provisions of said code section.

The negative answer to plaintiff's contention that neither of said decrees amounted to a "discharge or removal of the guardian", within the meaning of said code section 1805, is to be found in the case of *Cook* v. *Ceas,* 143 Cal. 221 [77 Pac. 65], wherein, in considering the meaning of the expression "discharge or removal of the guardian" as used in said section 1805, the court said, in part: "The guardian of an insane person may be 'discharged' by order of court when it appears that the guardianship is no longer necessary. (Code Civ. Proc., sec. 1802.) Guardians of either sort may be 'removed' for incapacity or mismanagement, etc. (Code Civ. Proc., sec. 1801), and so for the same and other causes executors and administrators may be 'removed'. It will thus be seen that the words 'remove' and 'discharge' are used indiscriminately in the statute to designate orders of court which have the effect of simply removing guardians, executors, etc., from office without exonerating them from liability to account. To such orders section 1805 has a just and reasonable relation, and no doubt it is to them that it refers. As to the word 'removal', there can be no doubt that the reference is to an order removing the guardian from office, and as discharge is sometimes used in the statute in the sense of removal, it is here to be construed in that sense on the principle of *noscitur a sociis.*" Furthermore, and aside from the provisions of section 1802 above referred to authorizing the "discharge" of the guardian when the guardianship is no longer necessary, section 253 of the Civil Code (now section 1580 of the Probate Code) provides that "A guardian may be removed by the superior court for any of the following causes: . . . 8. When it is no longer proper that the ward should be under guardianship"; and in the present case the decree entered in the guardianship proceeding on January 18, 1927, contains two distinct findings to the effect that it was no longer proper that plaintiff should be under guardianship. The first was that by virtue of the decree in the restoration proceeding entered "on the 19th day of April, 1926, and recorded on said 19th day of April, 1926, in Book 244 of Judgments, page 78 thereof, said Arthur W. Keck was adjudged to be

fully competent and fully restored to competency, and said order has become final''; and the second was that `` . . . this court does hereby further order, adjudge and decree that said Arthur W. Keck is fully competent and qualified to manage and care for his person and estate''. Clearly, therefore, in view of those findings it cannot be successfully maintained, as plaintiff argues, that the court's decree based thereon, revoking the guardianship, did not operate as a removal of the guardian within the meaning of section 1805 of the Code of Civil Procedure.

██ Nor did the incorporation in said decree of the provision ordering an accounting and retaining jurisdiction over the guardian until the final settlement of her accounts add anything of value thereto because even without said provision such jurisdiction was retained in the probate court by virtue of section 1774 of the Code of Civil Procedure (now section 1555 of the Probate Code). It is true, of course, that an adult ward may not commence his action against the sureties on his guardian's bond until there has been a settlement of the guardian's accounts showing a balance due the ward and the time for appealing from the order of settlement has elapsed. (*Cook* v. *Ceas, supra.*) But evidently the legislature deemed a period of three years after the removal of the guardian as ample time within which an adult ward might secure such final accounting and commence his action; and as pointed out in the above case, the delay on the part of the ward, following a removal of his guardian, in procuring a settlement of the guardian's accounts does not toll the statute of limitations governing the commencement of the action against the sureties. In the present case, as shown, the guardian was definitely removed and an accounting was ordered by the decree of January 18, 1927, but plaintiff failed to procure a final settlement of his guardian's accounts until March 27, 1930, which, as will be noted, was more than three years subsequent to such removal; and no excuse whatever is suggested by the record or otherwise for the unreasonable delay. As stated by the court in *Cook* v. *Ceas, supra,* the sureties on a guardian's bond are not without protection against stale claims, but on the contrary are entitled to invoke in their behalf the provisions of the general statutes themselves as well as the rule

requiring reasonable diligence from an adult ward in procuring a settlement of the guardian's accounts.

Plaintiff devotes much of his brief in furtherance of an effort to differentiate the case of *Cook* v. *Ceas, supra,* from the present one, and it may be conceded that in some respects which are not at all important here the facts are dissimilar. But he has utterly failed to demonstrate wherein the legal principles declared therein, and particularly the construction placed on said section 1805, are not controlling here.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.