[S. F. No. 16657.   In Bank.   Mar. 19, 1942.]

BERNARD F. MALONEY, Appellant, v. MASSACHU-
SETTS BONDING AND INSURANCE COMPANY (a
Corporation), Respondent.

2

Hubbard & Hubbard for Appellant.

William P. Caubu for Respondent.

CURTIS, J.—Plaintiff Bernard F. Maloney, previously an incompetent person, brought this action against defen-

dant Massachusetts Bonding and Insurance Company to recover the sum of $4,500, the full extent of its liability upon two surety bonds filed by plaintiff's former guardian, whose default in accounting had been determined by the probate court to be in excess of that amount. In the contest in the trial court defendant prevailed upon the ground that the action was barred by the three-year statute of limitations fixed by the provisions of section 1487 of the Probate Code, which reads as follows:

"No action may be maintained against the sureties on a bond given by a guardian, unless it be commenced within three years from the *discharge or removal of the guardian;* but if at the time of such discharge the person entitled to bring the action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed." [Emphasis added.]

The pertinent facts and dates as recited in the trial court's findings may be stated briefly as follows: In 1929 in an appropriate guardianship proceeding instituted in the Superior Court in and for the City and County of San Francisco plaintiff was adjudged incompetent and committed to the Agnew State Hospital, and his wife, Nellie M. Maloney, was appointed guardian of his person and estate. Some six months following his discharge as a patient from the state hospital and "on October 20th, 1932, after notice given in accordance with the order of this Court, an order was made by this Court providing that said BERNARD F. MALONEY be restored to competency, that the guardianship cease, that the order appointing guardian be set aside, that Letters of Guardianship be revoked, and that the guardian file an account of her administration." On July 27, 1935, the guardian died without filing an accounting. Subsequently, and on December 27, 1935, a second order was made and entered "restoring BERNARD F. MALONEY to competency, adjudging him sane and capable of managing his person and estate, and directing an accounting by the guardian." On June 22, 1937, by an order sustaining the plaintiff's objections to the supplemental account filed by the executor of the guardian's estate, the former guardian was adjudged in default in the payment of the sum of $8,477.33. The present action was commenced on August 23, 1939. Upon these facts the court further found "That more than three (3) years have elapsed since the date of restoration to compe-

tency of said BERNARD F. MALONEY and the date of the filing of this action,'' and it concluded therefrom that the defense predicated upon the special limitation prescribed for actions upon guardians' bonds by section 1487 of the Probate Code should be sustained. Judgment was entered accordingly for defendant, and plaintiff prosecutes this appeal.

The sole question presented for determination in this case is whether the action is barred by the lapse of time. The trial court did not indicate which of the two above-mentioned orders restoring plaintiff to competency—that of October 20, 1932, or that of December 27, 1935, almost seven and four years, respectively, prior to the filing of the present suit—it considered effective to set in motion the special statute of limitations prescribed by said section 1487. On the trial the defense relied primarily upon the date of the first order, while on this appeal respondent urges in support of the judgment the controlling effect of the date of the second order. It is appellant's position that neither of these decrees militates against his right to recover upon the surety bonds involved in this litigation, but that the order of June 22, 1937, which fixed the amount of shortage in the guardian's account, started the running of the applicable general four-year statute of limitations governing claims based upon written instruments, and therefore the commencement of this action on August 23, 1939, was within the time permitted.

It is definitely settled in this state that the ''discharge or removal of the guardian,'' as the expression is used in section 1487 of the Probate Code, can be accomplished only by *court order*. (*Cook* v. *Ceas*, 143 Cal. 221, 228-230 [77 Pac. 65]; *Keck* v. *Keck*, 16 Cal. App. (2d) 521, 524 [61 P. (2d) 79].) In the light of this established principle must be considered the force and effect of the above-mentioned orders made in the guardianship proceeding preliminary to the institution of the present action. First in chronological sequence is the decree of October 20, 1932, restoring the ward to capacity, terminating the guardianship, setting aside the order appointing the guardian, revoking the letters of guardianship, and directing that the guardian surrender to the former ward all of the estate and file an account within twenty days. Conceding that in the absence of other circumstances the explicit language in which this order is couched would constitute a ''discharge or removal of the

guardian," so as to start running the three-year statute of limitations therein provided, appellant urges that this decree must be declared null and void because there was no personal service of the citation upon the guardian five days before trial on the issue of capacity, as required by sections 1206, 1207 and 1471 of the Probate Code. In this connection appellant refers to the judgment roll in the guardianship proceeding, which shows that notice was given only in compliance with section 1200 of the Probate Code—by posting and mailing a copy to the guardian. However, it is not necessary here to pass upon appellant's contention that the insufficiency of the notice rendered the òrder in question void, for the record demonstrates to a certainty that the decree of 1932 is not binding in this case.

Second of these pertinent orders in point of time is the 1935 decree of restoration, which, after reference to the 1932 order, recites that "a question has been raised by a title company as to the sufficiency of the notice upon which said Order (of 1932) restoring to capacity was made," and which then proceeds to restore Bernard F. Maloney to capacity as of December 27, 1935. This decree, which has long since become final, incontrovertibly establishes that in 1935 the probate court considered the question of whether the 1932 decree was void because of lack of the prescribed statutory notice and thereupon resolved to enter an order which it had jurisdiction to make only if the former order was void. The record does not disclose any jurisdictional defect with respect to this later adjudication, negativing the validity of the 1932 decree, and accordingly upon this collateral inquiry the usual presumptions relative to the regularity of the probate court proceedings in the guardianship matter must be indulged in support of the 1935 decree of restoration. (15 Cal. Jur. 64, sec. 149.) In such situation whatever is upon the record is presumed to be rightfully there. Thus, it is conclusively presumed, if necessary, to support the later of two judgments shown by the roll, that the earlier was vacated and that the circumstances justified such action. (*Colton Land & Water Co.* v. *Swartz,* 99 Cal. 278 [33 Pac. 878].)

The general rule upon this subject is stated in 2 Freeman on Judgments, 5th Ed., page 1498, sec. 709, as follows: "A determination as to whether or not a prior adjudication is *res judicata,* or is valid or void, is conclusive on this issue in subsequent litigation." Recent application of this settled

principle in this state appears in *Geibel* v. *State Bar*, 14 Cal. (2d) 144, 148 [93 P. (2d) 97], wherein it is said: "A determination as to the validity of a former adjudication is *res judicata* in a subsequent proceeding attacking it."

Corroborative of this conclusion with respect to the operative effect of the 1935 decree of restoration is the third of the above-mentioned orders, that of June 22, 1937, sustaining the ward's objections to the guardian's supplemental account. That order, which also has long since become final, fixed the default of the guardian and is binding on the surety. (*Smith* v. *Fidelity & Deposit Co.*, 130 Cal. App. 45 [19 P. (2d) 1018].) Bearing significantly upon the point at issue is that order's review of the prior incompetency phase of the guardianship proceeding, wherein it recites that letters of guardianship were issued to the named guardian in October, 1929, and that "Said incompetent was restored to competency by said Court on December 27th, 1935." Here again the probate court in an independent ruling has adjudicated the date of restoration to capacity. Thus, the 1932 decree purporting to have restored the ward to competency and to have discharged the guardian is disputed by two subsequent orders. The 1935 order purports to restore him to competency as of that date, and the 1937 order entered in the accounting phase of the guardianship proceeding finds that he was restored in 1935. In treating these conflicting orders entered in distinct and separate branches of the guardianship matter as equivalent in import to inconsistent judgments rendered in different actions between the same parties in respect to the same subject matter, the following well-settled rule, by analogy, is applicable to the present case: "Generally, in case of successive and conflicting judgments in different proceedings between the same parties upon the same issues the last one is conclusive." (15 Cal. Jur. 57, sec. 143; see, also, 15 Cal. Jur. 104, sec. 171, and cases there cited.) Accordingly, the 1932 decree of restoration must be disregarded in the instant action.

The next point for consideration is whether the decree of December 27, 1935, effected a "discharge or removal of the guardian" within the meaning of section 1487 of the Probate Code. That order, after adjudging that "Bernard F. Maloney . . . be and he is hereby restored to capacity" and that he "is sane and capable of managing and taking care of himself and his property," directed that "the guar-

dianship . . . cease and terminate upon the proper and legal accounting and discharge of the guardian and the administration of the estate of the guardian.'' However, it is significant to note that the court on this last-mentioned date made no order for the removal or discharge of the guardian, since it would have been a futile act to so decree in view of her death some six months earlier, which event terminated the previously existing fiduciary relationship. In such circumstances the rules established by the leading authorities upon this subject in this state, *Cook* v. *Ceas, supra,* and *Keck* v. *Keck, supra,* preclude the adoption of the date of this decree for the commencement of the statutory period of limitations specified in section 1487. An examination of these decisions will demonstrate the basis of determination of the point here in issue.

In *Cook* v. *Ceas, supra,* an action upon a guardian's bond instituted more than three years after the ward had attained her majority, the court stated at pages 230-231:

''. . . we conclude that an action against the sureties of a guardian is not *by the terms of section 1805* [of the Code of Civil Procedure; now section 1487 of the Probate Code] barred until three years after a final order of court removing or discharging the guardian. By the terms of the statute, therefore, this action was not barred, for it does not appear, and it is not claimed, that the guardian of plaintiff ever was discharged or removed by any order of court. The respondent [the surety] contends, however, that the coming of age of the plaintiff operated a discharge of the guardian, and set the statute in motion. . . .

''It is certainly true that when a ward arrives at the age of majority the authority of the guardian comes to an end. . . . But although his authority is at an end when his ward comes of age, it cannot be said that in any ordinary or usual or statutory sense of the terms he has been *removed or discharged,* so that the statute does not in terms apply to such a case, and in order to bring the respondent within its protection its terms must be enlarged by construction. In other jurisdictions this seems to have been done. In the state of Montana it was held, construing a statute identical in terms with our own, that the death of the ward operated a discharge of the guardian, and set the statute in motion. (*Berkin* v. *Marsh,* 18 Mont. 152 [44 Pac. 528, 56 Am. St. Rep. 565].) In Massachusetts no action can be maintained against. the

sureties on a guardian's bond unless it be commenced within four years 'from the time when the guardian shall be discharged.' Chief Justice Shaw, in construing this statute, said: 'The court are of opinion that by the term discharged in this statute is intended any mode by which the guardianship is effectually determined and brought to a close either by the removal, resignation, or death of the guardian, the marriage of a female, the arrival of a minor ward at the age of twenty-one, or otherwise.' (*Loring* v. *Alline*, 9 Cush. 68.) This construction of the statute, in substance identical with our own, has been followed in other cases in Massachusetts, and reaffirmed as late as *McKim* v. *Mann*, 141 Mass. 507 [6 N. E. 740]. The same construction has been placed upon similar statutes in Michigan and Wisconsin, and perhaps other states. On the other hand, the Supreme Court of Texas has in several cases refused to extend the operation of a similar statute beyond its literal terms, adhering firmly to the doctrine stated in *Marlow* v. *Lacy*, 68 Tex. 154 [2 S. W. 52], to the effect that the statute does not begin to run in favor of the sureties until the guardian has been removed or discharged by order of court in one of the cases provided for in their Code of Procedure. The weight of authority, it must be conceded, is on the side of respondent, but we are disinclined to follow the construction adopted in Massachusetts, Michigan, Wisconsin, etc., for a reason not adverted to in some of the decisions, and not allowed sufficient weight, as we think, in those cases where it has been adverted to.

"A statute of limitations ought not to be enlarged in its operation by judicial construction when it is so framed as to work injustice either by itself or in conjunction with other provisions of law. In this state we have one rule which prohibits an action on the bond of a guardian's surety until there is a final order settling the guardian's account, and another rule barring the action in three years after the removal or discharge of the guardian. So far as its express terms require, the rule must no doubt be enforced, even where without the fault of the ward a final settlement of the account has not been obtained within three years after the removal or discharge, but neither justice nor sound policy requires that a law capable of working so inequitably should be enlarged by construction so as to embrace a class of cases not comprehended in its terms. And this conclusion does not leave the sureties on guardians' bonds without an ample

measure of protection against stale claims. They have all the advantage of the general statute of limitations, and of the doctrine of *Barnes* v. *Glide,* 117 Cal. 1 [48 Pac. 804, 59 Am. St. Rep. 153], which will hold wards to the rule of reasonable diligence in procuring settlement of their guardians' accounts. . . .''

It is apparent from this somewhat lengthy quotation that the court, after a full consideration of the arguments pro and con relative to the majority rule on the subject, expressly refused to follow the weight of authority and cited as supported by the better reasoning the line of decision requiring that the ''discharge or removal of the guardian'' be by *court order.*

In *Keck* v. *Keck, supra,* the legal principles of *Cook* v. *Ceas, supra,* were expressly reaffirmed, but upon the particular facts presented, the court held the action against the surety barred by the special three-year statute of limitations prescribed by the code section. As stated in the Keck opinion, at page 523, the plaintiff in 1924 was declared incompetent and his wife was appointed his guardian. In 1926 the plaintiff in an appropriate proceeding was restored to mental competency, and in the decree rendered therein it was ''ordered, adjudged and decreed that the guardianship of the person and estate of Arthur W. Keck, as an incompetent is hereby terminated.'' In January, 1927, an order was made in the guardianship proceeding again purporting to terminate the guardianship, and it was then specifically decreed that the order appointing the guardian ''be, and said order is hereby revoked.'' This order further provided that an accounting be had and that the court's jurisdiction over the guardian be retained until the accounts were settled. In March, 1930, there was a final settlement, showing a shortage, and the suit against the surety was instituted in December, 1930. With reference to the effect of the two early adjudications and as basis for the rejection of the plaintiff's contention that the statute of limitations did not commence to run until March, 1930, when the guardian's accounts were settled and the liability fixed, the court stated at pages 523-524: ''Thus it affirmatively appears that the action was commenced more than four years after the rendition of the decree of April 19, 1926, *terminating the guardianship proceedings,* and more than three years after the entry of the decree of January 18, 1927, in the guardianship proceedings *revoking the*

*powers of the guardian.* Manifestly these decrees and especially the latter operated as a removal of the guardian, and set in motion the statute of limitations prescribed in said section 1805 [of the Code of Civil Procedure; now section 1487 of the Probate Code]. The trial court properly held, therefore, that the action against the sureties was barred by the provisions of said code section.'' [Emphasis added.]

Thereupon the Keck opinion cited as controlling authority the case of *Cook* v. *Ceas* for the construction there placed on said section 1805 regarding the necessity of a court order to effect the ''discharge or removal of the guardian'' within the meaning of the code provision. Then following its reference to the particular findings contained in the decree of January 18, 1927, relative to the plaintiff's restoration to capacity, as furnishing ample demonstration of the probate court's determination as of that date that it was no longer proper that plaintiff should be under guardianship, the court significantly concluded its treatment of this point with the following statement, at page 525: ''Clearly, therefore, in view of those findings it cannot be successfully maintained, as plaintiff argues, that the court's decree based thereon, *revoking the guardianship,* did not operate as a removal of the guardian within the meaning of section 1805 of the Code of Civil Procedure.'' [Emphasis added.]

Thus, both *Cook* v. *Ceas, supra,* and *Keck* v. *Keck, supra,* establish as the rule in this state that before section 1487 of the Probate Code can come into operation there must be a court order discharging or removing the guardian. In the Keck case the two decrees of restoration to capacity satisfied the requirement of the code provision as settled by judicial construction, in that the 1926 order expressly terminated the guardianship and the 1927 order expressly revoked the powers of the guardian. Measured by these considerations, the Keck case is distinguishable from the present situation. Here the decree of October 20, 1932, contained an order discharging the guardian, but for the reasons above mentioned that decree is without force in this case. The only remaining order bearing on this point is that of December 27, 1935, whose sole purpose was to establish the competency of Bernard F. Maloney as of that date. It did not discharge or remove the guardian, nor can it be said that this adjudication automatically had such effect, for the powers of the guardian had long since

terminated by operation of law by reason of her death. (Prob. Code, sec. 1555.) Since under the rule of *Cook* v. *Ceas, supra,* section 1487 has no application to the termination of the guardian's powers other than by court order, it reasonably follows that this section can have no application where there is no effective court order of discharge or removal *before* the guardian dies or the ward attains majority. The contingency which would bring that section into operation here has not occurred and never can occur.

Nor in this connection did the incorporation in the decree of December 27, 1935, of the single reference to the guardianship, to wit, that it shall cease and terminate upon the guardian's rendering a proper and legal accounting, add anything of value thereto. Such language was characterized in *Keck* v. *Keck, supra,* at page 525, as meaningless, because without such provision the probate court would retain jurisdiction over the guardian for the purpose of settling the accounts. (Prob. Code, sec. 1555.) But holding such a provision to be without legal effect is not the same as holding that it can be distorted into an order discharging the guardian. In the Keck case the decree discharged the guardian and then retained jurisdiction over her "until the final settlement of her accounts." In such circumstances the court correctly held that the order discharging the guardian was not limited by the clause retaining jurisdiction over her. But that situation must be differentiated from the instant case, wherein the comparable decree of restoration to capacity as of December 27, 1935, contained no clause discharging or removing the guardian, or terminating the guardianship. As above noted, if the language in question were deleted from the order here under consideration, there would be no reference therein to the guardianship at all. It is plain, therefore, that such clause is not sufficient to bring this case within the operation of section 1487 of the Probate Code. This conclusion is in conformity with the salutary principle to which the court adhered in *Cook* v. *Ceas, supra,* to the effect that the harsh provisions of this special statute of limitations, capable of producing inequitable results by permitting an action against the surety to be barred before the cause of action accrues upon the final settlement of the guardian's account showing the balance due the ward, should not be

given wider application than the express terms of the enactment require.

It is manifest, therefore, from the above observations that the third and last of the orders to be considered here, that of June 22, 1937, finding the guardian in default and establishing the cause of action against the surety, is the operative decree insofar as the period of limitations is concerned. Under such circumstances, as was suggested in both *Cook* v. *Ceas, supra,* and *Keck* v. *Keck, supra,* the general four-year statute governing the time within which to bring an action upon an instrument in writing would apply. (Code Civ. Proc., sec. 337, subd. 1.) Accordingly, the present action was commenced well within the statutory period. Moreover, in this connection it is pertinent to note that there is no showing in the record that the surety has been in the least disadvantaged by reason of any delay in the settlement of the guardian's account, so that the defense of laches is of no avail in this case.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.