224 Cal.App.3d 634 (1990)
274 Cal. Rptr. 61
Estate of JEANETTE MARIE MASON, a Minor.
JEANETTE MARIE MASON, Petitioner and Respondent,
v.
LAWYERS SURETY CORPORATION, Objector and Appellant.
Docket No. A044217.
Court of Appeals of California, First District, Division One.
October 9, 1990.
*635 COUNSEL
Williams & Martinet, Leonard J. Martinet and Arlene Joyce for Objector and Appellant.
Irwin J. Borof for Petitioner and Respondent.
[Opinion certified for partial publication.[*]]
*636 OPINION
STEIN, J.
Lawyers Surety Corporation (surety) appeals from an order granting the petition of Jeanette Marie Mason to surcharge the guardian of her estate and ordering the surety to make payment on the bond. On appeal, the surety contends that the court erred in applying the specific statute of limitation set forth in Probate Code section 2333, instead of Code of Civil Procedure section 337.
.... .... .... .... .... .[*]
We hold that Probate Code section 2333 is the applicable statute of limitations.
.... .... .... .... .... .[*]

FACTS
On June 18, 1981, John K. Spencer, Jr. (guardian), was appointed as a successor guardian of the ward, Jeanette Marie Mason. On May 5, 1982, Mason attained the age of majority. On September 2, 1982, the guardian filed a petition for settlement of the first and final account.
On September 30, 1982, the probate court settled the account and ordered the guardian to distribute to Mason the guardianship property totalling $78,310.07. The guardianship estate consisted of the following: (1) $19,810.07 in cash, (2) a promissory note for $50,000 due May 11, 1983, and (3) certain real property in Mendocino County valued at $8,500. The order further provided that the guardian would be discharged on May 5, 1983, if he petitioned the court for discharge and filed receipts from Mason showing that she had received the estate property.[1]
On June 1, 1988, Mason filed a petition to surcharge the guardian and order payment from the bond. In the verified petition, Mason alleged that she had no notice of the September 30, 1982, order requiring Spencer to *637 immediately distribute the estate property. Instead of distributing the property to her, the guardian converted much of it to his own use. He did, however, make incidental payments totalling $43,550, including: (1) in October, November and December 1982, payments totalling $8,700; (2) in August 1983, a payment of $15,000; (3) in December 1983, a payment of $10,000; and (4) in September and December 1984, payments of $1,000 and $350, respectively. After the last payment, the guardian "disappeared" and Mason did not know what action to take. Sometime in 1985 Mason learned that her younger sister had successfully brought legal action against the guardian, and Mason thereupon obtained independent counsel. The petition alleged that after giving credit for the payments made and calculating interest due, the total amount owed to Jeanette Marie Mason was $63,840.68. The petition also sought an award of punitive damages.
The guardian was served but made no appearance in opposition. The surety was also served and filed an objection to the petition. The surety did not challenge the validity of the underlying claim against the guardian, nor did it challenge the accounting submitted by Mason. Its objections were limited to the following: "1. The relief requested against the surety is barred under Code of Civil Procedure Section 337. 2. The relief requested against the surety is barred under the doctrines of waiver, estoppel and laches. The surety is prejudiced in that a claim is made for interest over a five year term. 3. No authority exists in the Probate Code to award punitive damages against a Guardian or his surety."
The court granted the petition and entered an order on October 11, 1988, finding that the applicable statute of limitations was Probate Code section 2333, and that the limitations' period did not begin to run until the discharge or removal of the guardian, "or within three years of the date the order surcharging the guardian becomes final whichever is later." (Prob. Code, § 2333.) The order further found that the guardian had never been discharged and that the statute had not begun to run. The court therefore surcharged the guardian and ordered the surety to make payment on the $175,000 bond in effect on September 30, 1982, in the amount of $61,720.68 plus interest from June 1, 1988. The surety filed its notice of appeal on November 8, 1988.

ANALYSIS

I.
(1a) The surety contends that the court erred in finding the applicable statute of limitations to be Probate Code section 2333. At the time this action was filed, Probate Code section 2333 provided, in pertinent part, *638 that: "(a) In case of a breach of a condition of the bond, an action may be brought against the sureties on the bond for the use and benefit of the ward or conservatee or of any person interested in the estate. (b) Except as provided in subdivision (c), no action may be maintained against the sureties on the bond unless commenced within three years from the discharge or removal of the guardian or conservator or within three years from the date the order surcharging the guardian or conservator becomes final, whichever is later."[2] (Italics added.) Instead, the surety claims that the court should have applied the general statute set forth in Code of Civil Procedure section 337, providing that an action upon a written contract must be brought within four years. The surety argues that under the terms of Code of Civil Procedure section 337, Mason's cause of action accrued on May 5, 1983, the date the probate court set for the guardian to file receipts showing that the property had been received by Mason, and to petition for discharge.
Section 337 of the Code of Civil Procedure applies generally to any action based on a written instrument. Undoubtedly Code of Civil Procedure section 337 is broad enough to encompass an action on a surety bond. (See, e.g., Code Civ. Proc., § 996.450.) Probate Code section 2333, however, expressly applies to claims a former ward brings on a bond insuring the performance of a guardian. (2), (1b) "Under settled rules of statutory construction, `a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.' (Rose v. State of California (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].) This rule applies to statutes of limitations and consequently a specific statute must take precedence over general statutes of limitation." (Committee for a Progressive Gilroy v. State Water Resources Control Bd. (1987) 192 Cal. App.3d 847, 859 [237 Cal. Rptr. 723].) In accordance with this basic rule of statutory construction, Probate Code section 2333 is clearly the controlling statute.
Each of the authorities the surety relies upon for the contrary position is distinguishable. First, the surety cites Maloney v. Mass. Bonding & Ins. Co. (1942) 20 Cal.2d 1 [123 P.2d 449] for its proposition that a surety may assert the general statute set forth in Code of Civil Procedure section 337 if the guardian has never been discharged. In Maloney the guardian died before the final accounting and therefore was not and could not be discharged by court order. (Id. at p. 11.) Under then existing Probate Code section 1487, a former ward was required to bring an action against the *639 surety on a bond within three years from the date an order discharging or removing a guardian became final. (Id. at pp. 6-7.) The surety argued that the court should deem the guardian discharged as of the date the court had declared the ward competent, and that therefore the former ward's action was not brought within the special limitation period set forth in former Probate Code section 1487. (Id. at pp. 6-7.) The court rejected the surety's argument and held that the special limitation period set forth in Probate Code section 1487 was inapplicable because "[t]he contingency which would bring [section 1487] into operation here has not occurred and never can occur." (Id. at p. 11.) The court therefore applied the general statute set forth in Code of Civil Procedure section 337, and held that it did not begin to run until the probate court entered an order finding the surety to be in default, thereby establishing a cause of action against the surety. (Id. at p. 12.)
Maloney does not stand for the proposition that whenever a guardian is not discharged, the general statute of limitations applies. It is distinguishable on the facts and the law. The primary factual distinction is that in Maloney the guardian died before the court could order that the guardian was discharged, and the court held it was thereafter impossible to obtain a discharge order and to trigger the limitations' period under former Probate Code section 1487. By contrast, in this case the guardian disappeared and failed to petition the court for his own discharge. Court-ordered discharge could occur if and when the guardian fulfilled the conditions of the September 30, 1982, court order. Moreover, the ward or "any interested person" could have petitioned for removal of the guardian after he failed to comply with the court's order. (Prob. Code, §§ 2650, 2651.)
The more fundamental difference between Maloney and the case at bar, however, is that the current Probate Code section 2333 defines the special limitation period for suing the surety on a bond insuring a guardian's performance in much broader terms than did former Probate Code section 1487. Probate Code section 2333, like former Probate Code section 1487, does state that discharge or removal of the guardian is one of the events that may trigger the limitations' period. However, it provides alternatively that the statute may also begin to run from the date the order surcharging the guardian becomes final, whichever is later. (Prob. Code, § 2333.) Thus, under the current law, even if the discharge of the guardian were impossible, this special statute would nonetheless begin to run when the surcharge order becomes final. The situation addressed in Maloney where the special statute fails to provide any outside limit on the time to bring an action simply does not occur under the current law. Maloney, therefore, is inapplicable to this case.
*640 The surety also cites Rafferty v. Mitchell (1935) 4 Cal. App.2d 491 [41 P.2d 563]. In Rafferty, the probate court initially entered a decree of partial distribution in favor of a charity. The executor filed a final account stating that all the legacies set forth in the decedent's will had been paid except for the one in favor of the charity because no charity by the name listed in the decedent's will could be found. The court thereupon entered a final order of distribution but did not discharge the executor. Nine years later a charity filed suit on the bond claiming that it was the intended heir. It was undisputed that if the relevant limitations' period, which is never identified in the opinion, began to run at the time the order of distribution was entered, the charity's claim was time-barred. (Id. at pp. 492-493.) The only issue on appeal was whether, because the executor was an express trustee, the applicable statute did not begin to run "until he has repudiated the obligation and brought home notice of his repudiation to the distributee." (Id. at p. 493.) The opinion does not address a choice between a general and specific statute of limitations. Rather, the question was when did the cause of action begin to accrue. Moreover, it involved a decedent's estate, not a guardianship. The Rafferty decision therefore does not support the surety's argument.
(3) Finally, the surety argues that if Probate Code section 2333 applies, then in the situation where discharge or removal does not or cannot occur, a former ward could indefinitely delay obtaining a surcharge order thereby providing no outside limit on the liability of the surety on the bond. The doctrine of laches, however, could be invoked to insure that "`wards [exercise] reasonable diligence in procuring settlement of their guardians' accounts....'" (Maloney v. Mass. Bonding & Ins. Co., supra, 20 Cal.2d at p. 9, quoting Cook v. Ceas (1904) 143 Cal. 221 [77 P. 65].) In fact, the surety argued in the probate court that Mason committed laches. By its order requiring payment on the bond, however, the probate court impliedly found that Mason had not committed laches. The surety does not argue the issue on appeal and therefore is deemed to have abandoned the claim. (Cal. Rules of Court, rule 13; Rossiter v. Benoit (1979) 88 Cal. App.3d 706, 710-711 [152 Cal. Rptr. 65]; Long v. Cal.-Western States Life Ins. Co. (1955) 43 Cal.2d 871, 883 [279 P.2d 43].)

II.[*]
.... .... .... .... .... .

*641 CONCLUSION
The probate court's order is affirmed.
Racanelli, P.J., and Newsom, J., concurred.
NOTES
[*] Pursuant to rules 976 and 976.1 of the California Rules of Court, this opinion is certified for partial publication. The portions directed to be published follow.
[*] See footnote, ante, page 634.
[1] The order further provided that the amount of the joint surety bond covering the estate of Jeanette Marie Mason and that of her sister Gloria Mason be reduced from $175,000 to $90,000, to cover Spencer's continued performance as guardian for Gloria.
[2] Probate Code section 2333 was amended in 1988 to extend the period from three years to four. This amendment was effective July 1, 1989. (Deering's Ann. Prob. Code, § 2333 (1990 pocket supp.) p. 103.)